KARASICH vs. HASBROUCK and another.

|      |      |
|------|------|
| 28   | 569  |
| e116 | ⁷639 |

PRACTICE. (1–3) *Printed Case on appeal.*
INSTRUCTIONS TO JURY. (4) *Repetition of instructions.*
NEGLIGENCE. (5, 6) *Rule as to contributory negligence.*
DAMAGES. (7) *Injury to person; whether damages excessive.*

1. In jury cases, where there is conflicting testimony, it need not be set out in full in the "printed case" upon appeal; but it is sufficient to state therein what facts it tends to prove, and refer to the folios in the bill of exceptions where it can be found.

2. Where all questions and answers are taken down by a phonographic reporter, the judge settling the bill of exceptions may, in his discretion, require the testimony to be put into *narrative* form.

3. In cases where this court is required to review the finding of facts by the court below, and where it may be necssary to print the testimony more fully,. the same will be required hereafter to be reduced to narrative form in the printed case, in the absence of any special reason to the contrary.

4. It is not error to refuse a specific instruction, though correct in principle and applicable to the case, if it is substantially given in the general charge.

5 In an action for an injury to plaintiff's person, caused by a collision between defendant's vessel and that of plaintiff, an instruction that if plaintiff, by luffing, would *probably* have avoided the injury, he had no right of action—was properly refused; and, also, a further instruction that "it was positively in evidence from experts, and no testimony to the contrary, that if the plaintiff had luffed it would have tended to avoid, and in all probability would have avoided, the collision, and his omitting to do so was negligence, which would prevent a recovery."

6. The question is not, whether plaintiff *might* have avoided the injury, but whether he exercised reasonable and proper care, and made reasonable and proper effort, under all the circumstances, to avoid it; and this is peculiarly a question of fact for the jury.

7. The evidence being such as would justify a finding that plaintiff's injuries from the collision were permanent; that they unfitted him for the business to which he had been reared (and upon which he relied for the support of himself and family), or for any laborious employment; and that they woufd subject him to physical suffering during his life—this court does not find, in a verdict in his favor for $5,500, such evidence of partiality, passion or prejudice as will authorize it to set such verdict aside as excessive.

APPEAL from the Circuit Court for *Milwaukee* County.

The defendants appealed from a judgment in favor of the plaintiff. The case is stated in the opinion.

*Emmons & Hamilton*, for appellants, argued that there was no negligence shown on defendants' part; that if there was such negligence, it was not the proximate cause of plaintiff's injury, but plaintiff's own act was such proximate cause; and that plaintiff was at least guilty of contributory negligence; and to these points they cited *The Countess of Dunham*, 9 Monthly Law Mag., cited in Pritchard's Adm. Dig., 161, note 15; *The Eloides*, 3 Hagg., 365; *Pearson v. Duane*, 4 Wallace, 605; *Ins. Co. v. Tweed*, 7 id., 52; *Milton v. Steamboat Co.*, 37 N. Y., 210; *Miller v. Mariner's Church*, 7 Greenl., 51; 1 Denio, 317, 606; 17 Pick., 284; *Ryan v. R. R.*, 35 N. Y., 212; *Waite v. Gilbert*, 10 Cush., 177; 13 Gray, 487; *Nolan v. Tug "Union,"* per DRUMMOND, J., 2 Ch. Leg. News, 121; *Imhoff v. R. R.*, 20 Wis., 344; Art. XX, Act of Congress of April 29, 1864. They also contended that the jury were misled by the refusal of the instructions asked by the defendants; that if a party asks a specific charge pertinent to the case, he is entitled to it; and that his right is not satisfied by any language in the charge which is less than an exact equivalent to the instruction so asked.

*Mann & Cotzhausen*, for respondent, as to the duty of a steam vessel, in circumstances like those appearing in this action, cited *The Corsica*, 9 Wallace, 630; *The Alleghany*, id., 522; *The Johnson*, id., 146; *The Carroll*, 8 id., 302; and they argued upon the evidence that the questions of negligence were properly submitted to the jury.

LYON, J. On the morning of July 4th, 1868, the steam tug "G. W. Tifft," then owned by defendants and commanded by Captain Theodore Consaul, when running from the harbor at Milwaukee, through what is called the "straight cut," towards Lake Michigan, collided with a small sail boat called the "Mary

Karasich vs. Hasbrouck and another.

Jane," which was commanded by the plaintiff. The sail boat was sunk by the collision, and the plaintiff, who was on board of her at the time, has brought this action to recover damages for injuries to his person and property which he claims to have sustained by such collision and the sinking of his boat.

The plaintiff had a verdict in the circuit court for $5,500 damages; and from the judgment entered in pursuance thereof, the defendants have appealed to this court.

The testimony is very voluminous, the bill of exceptions containing over seven hundred folios; and instead of making and printing a case containing a brief abstract thereof, as required by the rules of this court, the appellants have printed in the case the whole bill of exceptions. It is believed that all of the testimony necessary to be inserted in the printed case for the purposes of this appeal might have been condensed to one-tenth the space which the testimony now occupies therein. We find no fault with the counsel for the appellants, for we know that the practice of printing all of the testimony contained in the bill of exceptions is quite general; but we allude to the subject for the purpose of repeating what we have had occasion to say before during the present term, that hereafter the rule of this court requiring a brief abstract of the return of the clerk to the writ of error or the appeal to be printed, (which return includes the bill of exceptions,) must be observed. In all jury cases where the testimony is conflicting upon any question of fact, it is entirely unnecessary to set out the testimony in full, but it is sufficient to say in the printed abstract that the testimony tends to prove or to disprove the fact, and to make a reference therein to the folios in the bill of exceptions where the testimony can be found.

By these remarks we do not wish it to be understood that a party is not entitled to have all of the testimony given upon the trial inserted in the bill of exceptions. But where all questions and answers are taken down by the reporter, the judge settling the bill may doubtless, in his discretion, require the

testimony to be put in a narrative form.    And in cases where, upon appeal, this court is required by law to review the finding of facts by the court below, and where it may be necessary to print the testimony more fully, this court will hereafter require that the same be reduced to a narrative form in the printed case, unless there be some special reason, in a particular case, why it should be printed in the other form.

The testimony introduced on the trial tended to show that the tug came down the harbor from the north, and turned east-wardly into the " straight cut ; " that one Crane, who was not a seaman nor employed on the tug, was at the wheel, and the captain was having his boots blacked; that they did not, and could not, by reason of intervening objects, see the sail boat until the tug turned into the cut; that Crane first saw her, and told the captain; that the sail boat, when discovered by the tug, was beating up the cut, and was about two hundred feet from the tug, sailing southwest, or diagonally across the bow of the tug, and was near the north pier; that the captain of the tug attempted to pass the sail boat to the north, between it and the north pier, but in doing so was embarrassed by a sand bar which had formed near that pier ; that the tug collided with the sail boat, and sunk her, sixty feet or more south of that pier ; that the tug was going at the rate of five or six miles an hour when she ran into the cut, and did not slacken her speed until just at the time of the collision ; that the sail boat was heavily loaded with stone, was going at the rate of three or four miles per hour, had started on the southwest tack before the plaintiff saw the tug, and did not change her course before the collision ; that the straight cut is about two hundred and sixty feet wide from north to south, and extends from the harbor to Lake Michigan, in nearly an easterly direction, about eleven hundred feet; that there was on the boat with the plaintiff a boy, who left the boat and went into the water when it appeared that the collision was inevitable, and who escaped without injury; that the plaintiff could swim, and, had he left the boat at the time

the boy left her, would probably have escaped without injury that he remained on the boat expecting to get on board the tug when the collision should take place; that when the tug struck his boat, he did attempt to get on board of her, but failed in the attempt, went into the water, was drawn under the tug and between her bottom and one of the masts of his own vessel, and was thereby injured.

As to the extent of his injuries, the testimony tends to show that the plaintiff had two ribs broken, and one of his legs, in the lower part thereof, so badly bruised and wounded that pieces of bone subsequently worked out through the wound; that he was confined to his bed ten or twelve days after he was injured, and was under the care of a surgeon, necessarily, for four months; that he has never recovered from the effects of either of said injuries, but still suffers from pain in the injured side and leg; that he is unable to lie upon that side, and his wounded limb becomes sore and painful if he gets his feet wet; that he is twenty-eight years of age, and a sailor by trade, but has been unable to follow that business since he was injured, because of such injuries; and that such injuries will probably be permanent in their effects, and probably will always incapacitate him from performing hard labor or enduring severe exposure.

The testimony further tends to show that his reasonable expenses for medical or surgical attendance were two hundred and twenty-five dollars, and that he lost in money and clothing forty dollars by the sinking of his boat.

No questions seem to be made upon the rulings of the court in admitting or rejecting testimony, or upon the charge of the judge to the jury. But the court refused to give the jury certain instructions asked on behalf of the defendants, to which refusal due exception was taken; and the only questions which we are called upon to consider are, 1. Did the circuit judge err in refusing to give such specific instructions? and 2d. Are the damages awarded by the jury excessive?

The circuit judge charged the jury, in substance, that the plaintiff could not recover unless he had proved to their satisfaction that he had not been guilty of any carelessness or negligence which contributed to the injury, and that nothing that could reasonably be required of him was left undone to avoid the injury; and if he had failed to thus satisfy them that he was free from negligence, he could not recover even though the carelessness of the agents of the defendants who were in charge of the tug, contributed to the injury.

He further instructed the jury that although the plaintiff was free from negligence, still he could not recover if they found that everything was done by those in charge of the tug that could be done under the circumstances to avoid the collision; that unless the negligence and carelessness of those in charge of the tug caused the injury, the defendants are not liable therefor.

On the rule of damages the judge instructed the jury as follows: "All the damage the plaintiff would be entitled to, if you find he is entitled to recover at all, would be the actual damage he has sustained. This you are to find from the proof; and they are to be the injuries which resulted immediately from the accident, not any doubtful ones. If there is a question of doubt as to the extent of it, whether it is permanent or not, he is not entitled to receive any damages for injuries which may possibly happen in the future. It must be the actual damages sustained in consequence of that injury; and if the injuries in the future are very remote, and not clearly and distinctly proven before you, you are not to assess any damages for them whatever."

After a careful examination of the charge of the court and of the instructions asked on behalf of the defendants, we are satisfied that there is nothing in the former of which the defendants can justly complain, and that every correct legal proposition contained in the latter, is included in the charge that was given to the jury. We have often held that it is not error to

refuse a specific instruction, although it may be correct in principle and applicable to the case, if the instruction is substantially given in the general charge. *Osen v. Sherman*, 27 Wis., 501.

The testimony tended to show, and perhaps did show, that had the plaintiff changed his helm, or, as the experts express it, had he *luffed*, in all probability the accident would have been avoided.

Two of the instructions based upon this testimony, demand special notice. They are as follows:

"If putting his helm to port, or luffing, would *probably* have avoided the personal injury claimed to have been sustained, he has no right of action."

"It is positively in evidence from experts, and no testimony to the contrary, that if the plaintiff had *luffed*, it would have tended to avoid, and in all probability would have avoided the collision. Omitting to do so was negligence, and will prevent a recovery."

The court was here asked to hold as a proposition of law, that if the plaintiff did not do an act, which, had he done it, would probably have avoided, the injuries which he received, such omission was negligence, which defeats his action.

The real question in this case is not whether the plaintiff might have avoided the accident and injury, but whether he exercised reasonable and proper care and made reasonable and proper effort, under all of the circumstances, to avoid it. This is peculiarly a question of fact for the jury, because the solution of it depends upon the existence or non-existence of very many alleged facts and circumstances concerning which the testimony is conflicting, and which can only be determined by the jury. Before the court can say, as a proposition of law, that the failure to *luff* was of itself negligence, it must know to a certainty the relative position of the boats; their speed and direction; their distance from the north pier; the facility with which the tug could be stopped, or the direction of either ves-

sel changed; the time which the plaintiff had in which to comprehend the situation and decide upon the best measures to be adopted for his safety; the direction and force of the wind; the probability that he would be able to save himself by clinging to the tug. These, and perhaps other conditions, are elements in settling this question of negligence, which must be determined before the court can say that the plaintiff was guilty of such contributory negligence as will necessarily defeat his action. And, as already observed, in respect to many of these conditions, the testimony is conflicting, and they can only be determined by the jury. *Castello v. Landwehr, ante,* p. 522.

We think the court was correct in submitting to the jury these questions as to the negligence of the respective parties. There was sufficient testimony tending to show that the injury to the plaintiff was caused by the negligence of the persons in charge of the tug, to make this a proper question to be determined by the jury; and the evidence that the plaintiff was guilty of negligence which contributed to the injury, was not sufficiently conclusive to justify the court in withdrawing from the jury the question as to whether there was such contributory negligence.

We find no error in the refusal of the court to give the instructions asked on behalf of the defendants.

2. Are the damages awarded by the jury excessive?

In *Goodno v. The City of Oshkosh (ante,* p. 300), we held that a verdict for five thousand dollars in that case was excessive. There the injury for which the damages were given was a fractured ankle, and although it had been a very painful and troublesome injury, the decision was placed upon the ground that the reasonable probabilities were that the limb, with the exception of some loss of symmetry, would probably be entirely restored in a few months to its original soundness and usefulness. And yet, in that case, a majority of the court was inclined to the opinion that a verdict for three thousand dollars should not be disturbed. It is said, in the opinion in that case,

that "had the evidence shown that the disability was serious at the time of the trial, and probably would be permanent, we do not say that we should have thought it our duty to disturb the verdict." The plaintiff in that action was a widow lady, having two young children dependent upon her for support, and she had no pecuniary resources except her own labor.

In the present case, the testimony justified the jury in finding that the injuries received by the plaintiff by reason of the collision, were permanent; that they unfitted him for the business to which he had been reared, and upon which he relied to support himself and family, or for any laborious employment; and that they would subject him to pain and suffering during his life. Under these circumstances we cannot say that the jury awarded the plaintiff excessive damages. We cannot say that the plaintiff has not sustained and will not sustain actual pecuniary damages by reason of such injuries, to the amount awarded by the jury. And although it must be conceded that the jury dispensed damages with a liberal hand, yet we fail to find in their verdict such evidences of partiality, passion, or improper bias or prejudice, as would authorize us to interfere and set the verdict aside as excessive. See *Murray v. Hudson River R. R. Co.*, 47 Barb., 196; *Birchard v. Booth*, 4 Wis., 67; *Potter v. C. & N. W. R. Co.*, 22 id., 615; *Schmidt v. Mil. & St. P. R. Co.*, 23 id., 186.

*By the Court.*— The judgment of the circuit court is affirmed.