Duffy vs. The Chicago & Northwestern Railway Company.

## DUFFY VS. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

NEW TRIAL. (1, 2) *When order granting new trial will be reversed.*
DAMAGES.   (3, 4) *Question of excessive damages for injuries to the person.*

1. The granting of a new trial, where the court has not proceeded upon a *mistaken view of the law*, is a matter of discretion, and the supreme court will interfere only in case of an *abuse* of such discretion. *Van Doran v. Armstrong*, 28 Wis., 236. But where it is clear that a new trial has been granted through a *mistake of law*, the order granting it will be reversed. *Jones v. Evans*, 28 Wis., 168, and *Bushnell v. Scott*, 21 id., 457, approved.

2. Where, on appeal from an order granting a new trial, the record shows clearly that the new trial was granted solely on the ground that the damages found by the jury were excessive, the order will be reversed if this court is of opinion, upon the evidence, that the damages were *not* excessive.

3. In an action for *injuries to the person*, where the testimony is such as to warrant the jury in finding that the injuries will produce serious and *permanent disability* — will incapacitate the injured party for labor or the pursuit of his business *for the remainder of his life,* — courts will seldom disturb the award of damages.

4. In such an action, it appeared that plaintiff, when injured, was a farmer, sixty-two years of age, and that, previous to the injury, he was an able-bodied, healthy man, possessed of a strong constitution, working regularly on his farm, and able to do "a good day's work — a man's work;" and there was evidence which would have justified the jury in finding that plaintiff's injury was permanent, and would practically disable him for labor during the remainder of his life. *Held*, that a verdict for $1,600 damages should not have been *set aside as excessive.*

APPEAL from the Circuit Court for *Dodge* County.

This action was here on a former appeal, and was remanded to the circuit court for trial: 32 Wis., 269. By reference to the report, it will be seen that it was brought to recover for personal injuries received by the plaintiff in consequence of the alleged negligence of the servants and employees of the defendant in running a locomotive and train of cars.

The cause was subsequently tried in the circuit court, and the trial resulted in a verdict for the plaintiff for $1,600 damages. At the same term, on motion of the defendant, the court set aside the verdict, and granted a new trial, on the ground that the damages were excessive. The plaintiff appeals from such order to this court.

The only testimony as to the nature and extent of the plaintiff's injuries, given upon the trial, is that of the plaintiff and his physician, Dr. Cody, of Watertown.

The plaintiff testified as follows: "I staid at Weber's about a week. I was confined to the house the first two months. I couldn't do anything. After that I commenced to walk around a little. After about six months I commenced to try to do a little work occasionally, when I could; but I could not do much work for a year. I did try to work sometimes, when I was in a hurry, when I was not fit to work. The most serious injury was on my hip and side. I got a finger broke, but that I did not consider as anything at the time. My head and face and shoulders were hurt considerable. I was about sixty-two years old at that time. My occupation was farming. I was able to do a good day's work before that time. I considered I could do a man's work until then. Always worked on the farm since I came to Wisconsin. I was in the habit of working regularly before the time of the injury.

"I don't feel much inconvenience from these injuries now. I don't know whether it is the injuries or getting old, but I feel my back weak most all the time since. Until lately, my side troubled me a good deal ever since. Lately, it has got so it don't trouble me much now. After working, it troubles me some now, but I don't mind it. My expenses at Weber's were not much — about five dollars. I had a physician to attend me for those injuries. It was Dr. Cody, of Watertown. I do not know exactly what his bill amounted to. He doctored my family before and since, and I never asked him for a separate bill."

Dr. Cody testified as follows : "I live in Watertown. Am a physician. Have been practicing between 29 and 30 years. I know the plaintiff in this action. I was called to see him on the 3d of June, 1869, at Weber's store in the city of Watertown. I found that he had been injured by the upsetting of a wagon upon him. His left hip and side were injured, and also his right hand; one of the long bones of the right hand was broken. He was scratched some about the head and shoulders, but nothing serious. I called on him as often as twice a day while he was at Weber's. I treated him more or less for these injuries for perhaps six months. I think he was laid up two months before he went out. I had known *Mr. Duffy* previous to this time for twenty-five years or more. He was an able-bodied, healthy man, a man of strong constitution. Within the last year I have not examined him. I may have talked with him about these injuries. I would not be able to state whether these injuries are permanent or not. He complained all the time of not being as well as he was before." *Question by the court:* "You are asked your opinion as to whether they are permanent or not from what you know ; not the fact, but your opinion — what you think about it." *Answer:* "I think he is injured more or less ; that it will always follow him. He will not be so sound. He has always complained of his back constantly. It is my opinion that this is the result of those injuries he received at that time. I could not say how much my bill was for treating him for these injuries ; perhaps two dollars a day while he was at Weber's."

On cross examination this witness said: "The severe injuries that he complained of, were in the hip and side. I treated him for all the injuries he had. The hand was not a very serious matter — a fracture of the bone. The difficulty with his side and hip was a contused wound, a contusion from something falling on it. He had not the powers of his hip or his leg for a year and a half, or over. His knee was lame ; he couldn't walk on it. That would result from a blow on the

hip. I examined him once after he was at Weber's; not his hip and side, but he showed me his knee." *Question:* "Now, what do you make up your opinion from, that this may be permanent or last to the present time?" *Answer:* "I know from experience, from his walk, that he has been a little lame nearly all the time since. He walks rather decrepit now, to-day — a little lame. I know that that results from this injury as well as I know anything in surgery or medicine. I know lameness would follow a severe contusion. Lameness and decrepitude follow injuries as a rule. I regarded the injuries as internal. The sciatic nerve and ligature were injured."

*Harlow Pease*, for appellant, argued that the damages were not excessive, the proofs upon the trial having shown the injuries to be both *serious* and *permanent*; that the injuries were caused by a plain violation of the laws of this state on the part of the defendant, and by the grossest carelessness of it agents, such as to entitle the plaintiff to *punitive* damages (*Beale v. C. & N. W. R'y Co.*, 1 Dillon, 568); that there was nothing tending to show that the jury were influenced by improper or corrupt motives, and therefore their verdict should not be disturbed (23 Wis., 186 ; 26 id., 56 ; 28 id., 569); and that a comparison of this with other like cases would show that the verdict in this case, instead of being excessive, was below the average *compensatory* damages.

*D. Hall,* for respondent:

1. The bill of exceptions does not show whether the motion for a new trial was made upon the judge's minutes, upon a case, exceptions or newly discovered evidence. It does not, therefore, show what proceedings were had, or what proofs were adduced upon the hearing ; and as no error affirmatively appears, the decision of the court must be presumed correct. 2. The proofs presented on trial show damages so trivial that it is clear the verdict could have resulted only from the passion or prejudice of the jury ; and it does not appear but the court, upon the hearing of the motion, may have had most convincing

proofs. 3. The granting of new trials is so much a matter of discretion that the court will interfere only in case of gross abuse of such discretion. *Jones v. Evans*, 28 Wis., 168; *Van Doran v. Armstrong*, id., 236.

LYON, J. I. The learned counsel for the defendant has submitted to the court an argument, based upon the assumption that the bill of exceptions does not show whether the motion for a new trial was made upon the minutes of the court, or upon a case, or for newly discovered evidence, in which he contends that the circuit court may have had before it the most ample and convincing proofs, outside of the testimony contained in the bill of exceptions, to sustain its ruling.

Admitting his premises to be correct, it would not be difficult to show from this record that the bill of exceptions does contain all of the testimony which was before the circuit court on the hearing of the motion for a new trial. But the premises are not correct. The record shows affirmatively that the attorney for the defendant " moved the court *on its minutes* to set aside the verdict and grant a new trial." The counsel was doubtless misled by the omission of the words " on its minutes," from the printed abstract of the case furnished by the opposite party.

II. It is further urged as a reason why the order granting a new trial should not be disturbed, that " the granting of new trials is so much a matter of discretion that the court will not interfere except in a case of a gross abuse of that discretion."

If it does not appear that the court has proceeded upon a mistaken view of the law in granting a new trial, the granting thereof is matter of discretion, and this court will not interfere unless there has been an abuse of such discretion. This rule was applied in *Van Doran v. Armstrong*, 28 Wis., 236, and in the cases there cited.

The rule applicable to this case is believed to be correctly stated in *Jones v. Evans*, 28 id., 168. It is there said, in effect,

that when it is clear that the court below has proceeded upon a mistaken view of the law in granting a new trial, this court will interfere. (p. 170.) The same rule was applied, and an order granting a new trial reversed, in *Bushnell v. Scott*, 21 id., 457.

In the present case, the record shows clearly that the verdict was set aside and a new trial granted for the sole reason that the court thought the damages awarded were excessive. The order was not made in the exercise of the discretionary power of the court in that behalf, but is based entirely upon, and is the result of, the views of the court upon a proposition of law. If those views are correct, the order must be affirmed,— if incorrect, it must be reversed.

III. We are brought, therefore, to the consideration of the principal question in the case, which may be stated thus : Are the damages assessed so disproportionate to the injuries which the jury were justified by the proofs in finding that the plaintiff received, that the court can properly hold, as matter of law, that the same were excessive?

It is impossible to state any test by which it can be indisputably determined in all cases of this kind, whether the damages awarded are or are not excessive. To determine this question, many conditions are to be considered. The age and previous physical condition of the injured party, the amount of suffering, physical and mental, caused by the injury, the probability or certainty that its effects will be permanent or of long duration, the extent of disability, the time lost, or which probably will be lost, and the value thereof, and the expenses necessarily incurred by reason of the injury, are some of those conditions. Hence, within certain limits, this question must be determined in each case upon due consideration of all the facts proved therein, or which the testimony tends to prove.

But it may safely be laid down as a general rule in cases of this kind, that when the testimony warrants the jury in finding that the injury will produce serious and permanent disability

— that it will incapacitate the injured party for labor or the pursuit of his business during the remainder of his life,— the courts will very seldom disturb the award of damages. *Kura-sich v. Hasbrouck,* 28 Wis., 569, is a case in which this rule was applied.

It should be observed that the plaintiff is only entitled to recover actual or compensatory damages. This is not a case in which exemplary or punitory damages can properly be given.

There are several cases in which this court has held, as matter of law, that the damages awarded by the jury were excessive. A brief reference to some of these cases may aid us in determining the question under consideration.

In *Goodno v. Oshkosh,* 28 Wis., 300, the injury complained of was to the ankle joint. The plaintiff was a widow lady, and dependent upon her own labor for the support of herself and children. The testimony tended to show that she was totally disabled by the injury for nine months, during which time she endured much pain, and that at the time of the trial (which was nearly two years after she was injured), the injured joint was very weak and turned easily. Her surgeon testified that she would probably recover in two or three months so that the limb would be as useful as it ever was, but that it was out of line, and its symmetry would probably never be restored. A verdict for $5,000 damages was set aside as excessive, but a majority of the court intimated that one for $3,000 would not have been disturbed.

In *Spicer v. The Chicago & N. W. R'y Co.,* 29 id., 580, the injury was to the ankle, which was very badly sprained. The plaintiff was unable to step upon the foot affected for four weeks. At the time of the trial (seven months after the injury), it was not entirely well, and caused some pain. The surgeon testified that it was a very bad sprain, which would require a long time to heal, but that his impression was that the plaintiff would, ultimately, entirely recover from the effects of the injury. A verdict for $2,500 damages was held excessive and

set aside, and $1,000 was named as the highest sum which could properly be awarded to the plaintiff under the testimony.

In *Patten v. The Chicago & N. W. R'y Co.*, 32 Wis., 524, the plaintiff was a lady, seventy-two years of age, without family or dependants. She lived with her relatives and friends, and supported herself by her labor in the various families with whom she resided. The testimony showed that her right shoulder was severely injured, and tended to show that it was dislocated. She was disabled for several weeks, and suffered much from the injury. At the trial, six months after she was hurt, her right arm was practically useless. The surgeon who attended her immediately after she was injured, was not examined as a witness; but two others, who examined her about the time of the trial, testified that the usefulness of her arm was considerably impaired. They both declined, however, to give any opinion as to the extent of her injuries, or how long their effects would probably continue. The verdict was for $2,538. It was held excessive, and the intimation of the court was, that upon the testimony in the case a verdict for more than $1,200 would be excessive.

In the present case, the plaintiff, according to the testimony of Dr. Cody, his physician, who had known him twenty-five years, was, before he was injured, an able-bodied, healthy man, and possessed of a strong constitution. He was sixty-two years of age, and is a farmer. He testified that before he was hurt he worked regularly on the farm, and was able to do, as he expressed it, " a good day's work — a man's work." The testimony tends to show that, in consequence of the injury complained of, the plaintiff was able to do but little work for a year or more; that he had not the power of his hip and leg for a year and a half; and that his back was weak and troubled him from the time of the injury to the trial — a period of over four years. Dr. Cody, who attended him while he was suffering from such injury, testifies that in his opinion it will always

follow him; that he will not be as sound; and that the diffi-
culty in his back is a result of the same injury.

Upon this testimony the jury might well find, and probably
did find, that the plaintiff's injuries were permanent, and would
practically disable him for labor during the remainder of his
life.    Although sixty-two years of age when injured, he was
healthy and vigorous, and could, but for the injuries. have rea-
sonably expected to enjoy several years of good bodily health,
with the capacity to perform considerable labor.    The testi-
mony tends to show that by reason of his injuries this reason-
able expectation has been destroyed.

The probable permanent effect of the plaintiff's injuries dis-
tinguishes this case from those above referred to; and, in view
of the intimations as to the amount of damages in those cases
respectively, which would not be considered excessive, we do
not think that it can be successfully maintained that the award
in this case is excessive.    It seems to us that $3,000 in the
Goodno case, or $1,000 in the Spicer case, or $1,200 in the
Patten case, is fully as liberal an award as $1,600 in this case;
and that if verdicts for the above sums can be sustained in
those cases respectively, one for $1,600 ought to be sustained
in this case.

Upon the whole, we think that the damages awarded by the
jury are not excessive, and hence, that the order granting a new
trial should be reversed.

*By the Court.* — Order reversed.