BERG VS. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*November 10 — November 30, 1880.*

COURT AND JURY: SPECIAL VERDICT. *(1, 2) Duty of court as to submitting facts for special verdict. (4) Instructions as to positive and negative testimony.*

RAILROADS: *(3) Negligence of fellow servant: Custom. (5) Damages.*

1. A refusal to submit specific questions for a special verdict, *in the form proposed* by the appellant, is not error where such questions are *substantially* submitted to the jury.

2. It is unnecessary to submit a question of fact to the jury when the fact itself is established by undisputed evidence.

3. An established custom in the management of a depot yard of a railroad company, that, in switching cars therein, it is not the company's duty to have a brakeman or other person upon each group of cars, or single car, separately in motion, to give warning of its approach to men at work in the yard, but that the men in such cases must look out for themselves — would not relieve a brakeman actually in charge of a moving car, who should see that it was approaching a workman upon the track, from the duty of stopping it or warning him of its approach; and therefore it would not relieve the company from liability to such workman for an injury thus caused, under ch. 173 of 1875.

4. A refusal to instruct the jury that the positive testimony of two witnesses that a warning of the approach of a car was given by the brakeman "will outweigh the negative testimony of four that they did not hear it, provided the witnesses are all equally credible," was not error in this case, because it ignores the consideration of what opportunity each witness had of hearing the alleged warning, and because two witnesses did not testify positively that the brakeman gave such warning, nor was the negative testimony confined to four witnesses.

5. Just before the injury complained of, plaintiff was a laborer, a strong, healthy man, thirty-four years old; and he has a wife and four children. The injury made it necessary to amputate one leg above the knee; at the time of the trial, nearly a year after the accident, he was unable to do any work, and he testified that if he walked, stood, sat or kept his leg down for any length of time, he became dizzy. In view of these facts, and of the physical and mental suffering involved in the injury, this court does not find in a verdict for $11,000 such evidence of prejudice, passion or improper bias in the jury as justifies it in reversing a judgment for that sum.

APPEAL from the County Court of *Milwaukee* County.

The action was brought under chapter 173, Laws of 1875, to recover damages for personal injuries received by the plaintiff, caused by the alleged negligence of a certain employee of the defendant railway company. No question is raised on the pleadings.

It appears from the evidence given on the trial, that, at the time he was injured, the plaintiff was at work for the defendant as a trackman, and had been in such employment for about two years. On the morning of December 21, 1878, he was engaged with others, under the direction of the proper foreman, in removing snow and ice from a track in the depot yard of the defendant in the city of Milwaukee. A locomotive pushing a box car passed him, going south. He *looked in the* direction from whence it came, and, seeing nothing else approaching, commenced work on the same track, with his back to the south. Two other men, facing south, were also at work on the same track a few feet south of him. Very soon after the plaintiff commenced work, a car was thrown upon the track on which he was at work, south of him, detached from the locomotive. It was probably the same car which passed him shortly before. There was a brakeman on the top of it. The car moved slowly, and just as it approached the two men at work there, they saw it and got off the track. It passed on, struck the plaintiff, knocked him down, pushed him along the track a short distance, and then one wheel passed over his leg, injuring it so that it was necessarily amputated above the knee.

When the plaintiff was struck, he cried out, and the brakeman (who was about to descend, or was descending from the car) ran to the brake at the other end of the car, turned it down, and stopped the car before the second wheel of the forward truck passed over the plaintiff.

The brakeman testified that when about 200 feet distant from the plaintiff he called to him and the others at work

there to "look out;" that he saw the two men get off the track, and supposed the plaintiff had done so until he heard the latter cry out; and that he could have seen the plaintiff until the car came within twenty feet of him. A witness who was working near the plaintiff on another track, testified that when the car was some distance from the plaintiff (but nearer the witness), he heard some one call "Look out," but don't know who called. The plaintiff, the two men working near him on the same track, two other men who were at work near him on other tracks, and the section foreman, who was ten rods or more further from the car than was the plaintiff, all testify that they did not hear the brakeman give any warning of the approach of the car. It further appears that, at the time of the accident, the weather was cold, and the plaintiff's cap was pulled down over his ears; but how closely, or to what extent his ability to hear was thereby impaired, does not appear.

At the close of the plaintiff's testimony, and again after the testimony was all in, counsel for defendant moved for a non-suit. Both motions were denied.

Counsel for defendant proposed six instructions, all of which were given except the following: "The positive testimony of two witnesses to the fact that the brakeman called out, will outweigh the negative testimony of four who testify that they did not hear it, provided the witnesses are all equally credible."

Counsel for defendant also demanded a special verdict, and asked the court to submit the following questions to the jury: "(1.) Was the brake on this car set at the time of the accident? (2.) Was it plaintiff's duty, according to the custom of this railroad yard, to look out for himself while working on the track? (3.) Was this accident the result of any negligence on the part of the defendant? (4.) If you answer the foregoing question in the affirmative, state in what that negligence consisted. (5.) Was plaintiff in the exercise of due care when he took up his position on the track with his back towards

the switch engine and cars, and his cap drawn down over his ears?"

The court refused to submit such questions to the jury, but submitted instead thirteen questions, the first four and the twelfth of which were proposed on behalf of the plaintiff. The questions thus submitted, and the answers of the jury thereto, are as follows: "(1.) Does ordinary care and prudence require that a notice, signal or warning should be given to persons placed to work as the plaintiff was placed at the time he sustained his injury, where a car is run upon such track as the car which struck the plaintiff was? *A.* Yes. (2.) Was such a notice, signal or warning given at the time the plaintiff was injured? *A.* No. (3.) If not, was the omission to give the same negligence on the part of the defendant or its employees? *A.* Yes. (4.) Was such negligence the proximate cause of the injury sustained by the plaintiff? *A.* Yes. (5.) Was this car going at a slow rate of speed? *A.* Yes. (6.) Was there a brakeman upon the car just preceding and at the time of the accident? *A.* Yes. (7.) Did this brakeman call to the men working on the track to look out? *A.* No. (8.) Did the brakeman set up the brake before the accident, or not until after the man was knocked down? *A.* Not until afterwards. (9.) Was the plaintiff told at the time he went into defendant's employ, to look out for himself while working at the track? *A.* No; except, possibly, in a general way. (10.) Did plaintiff know it to have been a frequent occurrence in this yard to send cars upon the different tracks in the yard without having brakemen upon them? *A.* Yes. (11.) Was the brakeman guilty of a want of ordinary care and diligence at the time of the accident? *A.* Yes. (12.) Was the plaintiff guilty of want of ordinary care which contributed to his injury? *A.* No. (13.) Do you find for the plaintiff or for the defendant, and, if for the plaintiff, at what sum do you assess his damages? *A.* We, the jury, find for the plaintiff, and assess damage in the sum of $11,000."

Berg vs. The Chicago, Milwaukee & St. Paul R'y Co.

A motion for a new trial was denied, and judgment for the plaintiff was entered pursuant to the verdict, for $11,000 and costs. The defendant appealed from the judgment.. ·

For the appellant there was a brief by *Melbert B. Cary*, and oral argument by *John W. Cary*. They made the following among other points: 1. The court below erred in refusing to charge the jury as requested by defendant. The instruction asked was based upon the undisputed evidence in the case, and upon the ruling in *Urbanek v. Railway Co.*, 47 Wis., 59. See *C. & A. R. R. Co. v. Gretzner*, 46 Ill., 75; *Culhane v. R. R. Co.*, 60 N. Y., 133. 2. The court erred in refusing to submit to the jury the questions propounded by defendant. Upon the second question hinges the liability in this case. It involved matters of pure fact, to be found by the jury. 3. The damages are excessive. Actual damages only are to be allowed. These include compensation for diminished capacity for work, and for pain and suffering. Plaintiff was earning about $300 per annum. He was a common laboring man of middle age, not a skilled laborer or in the direct line of any possible promotion. The present pecuniary value of his entire capacity for earning money was, by the Northampton tables, $3,054.90; by the Carlisle tables, $3,388.50. But his capacity is not diminished more than one-half. The plaintiff's sufferings do not appear to have been unusual. He was confined to his bed but ten weeks. The sum allowed is unreasonably large, and evinces partiality, prejudice and a perverted judgment on the part of the jury. *Goodno v. Oshkosh*, 28 Wis., 300; *C. & N. W. R'y Co. v. Jackson*, 55 Ill., 492; *Collins v. R. R. Co.*, 12 Barb., 492; *Potter v. R'y Co.*, 21 Wis., 372; 22 id., 615.

For the respondent there was a brief by *Jenkins, Elliott & Winkler*, and oral argument by *Mr. Winkler:*

The instructions given to the jury were not excepted to, and not made part of the bill of exceptions. They must be presumed to have been not only correct but full. Error is not presumed, but must be shown by the party alleging it. *O'Mal-*

*ley v. Dorn*, 7 Wis., 236; *Townsends v. Bank*, id., 185; *Parish v. Eager*, 15 id., 532; *Kelley v. Kelley*, 20 id., 443; *Eaton v. Lyman*, 33 id., 34. The instruction refused must be presumed superfluous, even though it be correct. *Osen v. Sherman*, 27 Wis., 501; *Karasich v. Hasbrouck*, 28 id., 569. But the rule of law embraced therein is not correct, unless, as was not the case here, the situation of all the witnesses is the same. *Urbanek v. Railway Co.*, 47 Wis., 59. Nor was the instruction applicable to the facts proven. Upon the question of damages, counsel cited *Schultz v. Railway Co.*, 48 Wis., 375; *Blair v. R. R. Co.*, 20 Wis., 254; *Curtis v. R. R. Co.*, 27 id., 158; *Schmidt v. Railway Co.*, 23 id., 186; *Barksdull v. R. R. Co.*, 23 La. Ann., 180; *Choppin v. R. R. Co.*, 17 id., 19; *Boyce v. Stage Co.*, 25 Cal., 460; *Caldwell v. Steamboat Co.*, 56 Barb., 426; *Walker v. Railway Co.*, 63 id., 260; *Campbell v. Portland Sugar Co.*, 62 Me., 552; *Deppe v. R. R. Co.*, 38 Iowa, 592; *Belair v. Railway Co.*, 43 id., 662; *Collins v. Council Bluffs*, 32 id., 324; 35 id., 432; *Shaw v. R. R. Co.*, 8 Gray, 45; *Hewlett v. Cruchley*, 5 Taunt., 277; *Craker v. Railway Co.*, 36 Wis., 679.

LYON, J. The determination of three questions will dispose of all the errors alleged as grounds for a reversal of the judgment.

1. Did the circuit court err in refusing to submit to the jury the questions, or either of them, proposed on behalf of the defendant? The substance of the *first* of these questions, " Was the brake on this car set at the time of the accident? " was submitted to the jury as question numbered 8, and was answered in the negative. The *second* question, " Was it plaintiff's duty, according to the custom of the railroad yard, to look out for himself while working on the brake? " was answered in the affirmative by the undisputed evidence, and there was no necessity for submitting it to the jury. *Hutchinson v. Railway Co.*, 41 Wis., 541; *McNarra v. Railway*

*Co.*, id., 69; *Williams v. Porter*, id., 422; *Ward v. Busack*, 46 Wis., 407. It seems proper to remark here that, notwithstanding the dissent in the latter case from this proposition by the late chief justice, it must be deemed settled that it is unnecessary to submit a question of fact to the jury when the fact itself is established by undisputed evidence. When so established the fact is as much a verity in the case as though it were admitted by the pleadings. It would be absurd to submit a question of fact to the jury when there is no question that the fact exists.

We understand, from an examination of the testimony, and from the argument of the learned counsel of the defendant, that the custom sought to be proved is, that, in switching cars in the depot yard, it is not the duty of the railway company to have a brakeman or other person upon each train of cars in motion, or upon each car which is being moved separately, to give warning to the men at work in the yard of approaching danger; but that a car may be sent along any of the tracks, attached to or disconnected from a locomotive, as the exigencies of the business may require, without any one upon it; and in such case the men employed in the yard must look out for themselves. That is to say, it is not *per se* negligence of the company or its employees thus to move a car in its yard, unattended, and the peril of injury from a car so moving is, by the custom, one of the perils of the service, the risk of which is upon the servant. This custom was fully proved on the trial.

But the custom has little significance in this case, for the reason that there was a brakeman on the car, who saw the plaintiff at work on the track upon which the car was moving, a sufficient time before the injury to have stopped the car before it reached the plaintiff, or to have warned him of its approach. The custom does not relieve the defendant of liability for the negligence of its other employees. It did not

relieve the brakeman of the duty of stopping the car, or warning the plaintiff of its approach, or cast upon the plaintiff the risk of his failure to do so. No such custom was referred to in the question proposed, and none was proved. On the contrary, the evidence tends to show that the brakeman should have given the trackman some notice or warning of the approach of the car. On grounds of public policy, a custom which would permit the brakeman to let the car run upon the trackmen when he knew their peril and could easily avoid it, could hardly be sustained as a valid custom.

The third, fourth and fifth questions proposed on behalf of the defendant were substantially submitted to and answered by the jury, as will be seen by referring to questions 1, 2, 3, 4, 11 and 12, so submitted, and the answers thereto returned by the jury.

2. Did the court err in refusing to give the instruction asked on behalf of the defendant, which is as follows: " The positive testimony of two witnesses to the fact that the brakeman called out, will outweigh the negative testimony of four who testify that they did not hear it, provided the witnesses are all equally credible?" As a statement of a general rule of evidence the instruction is correct. It was applied by this court in *Ralph v. Railway Co.*, 32 Wis., 177. Yet it does not follow that the refusal to give it was error. It is seldom error to refuse to give an instruction which is only a statement of an abstract rule of law. It might be error to give such instruction unless it is so drawn as to be applicable to the case on trial. This instruction is not so drawn. Two witnesses did not testify positively that the brakeman called out. The brakeman himself so testified, and another witness testified that he heard some one call out, but did not know who it was. Neither was the negative testimony confined to four witnesses. Besides, the instruction ignores all modifying circumstances; as, for example, the relative means or opportunity of the dif-

ferent witnesses to hear the alleged warning. See *Urbanek v. Railway Co.*, 47 Wis., 59. We do not think it was error to refuse the instruction.

3. Are the damages awarded by the jury so excessive as to justify the interference of the court? The rule by which this question must be determined is thus stated in *Schultz v. Railway Co.*, 48 Wis., 375: "The fact that larger damages are awarded than the court would give, were it to assess them, is not of itself sufficient to justify a reversal of the judgment. Before the court can interfere, it must find in the verdict evidence of partiality, passion or improper bias or prejudice on the part of the jury. *Karasich v. Hasbrouck*, 28 Wis., 569, and cases cited." Page 383.

The plaintiff in the present case is a laborer. At the time of the accident he was about thirty-four years of age, and was a strong, healthy man. He has a wife and four young children. By reason of the injury his leg was amputated above the knee. At the time of the trial, nearly a year after he was injured, he was still unable to do any work. He testified (and is not disputed): "I can't do anything now. If I stand for any length of time, or sit, or keep my leg down, . . . I always get dizzy in my head; also when I walk any distance. I was healthy and strong before this accident. I am not half so good now as I used to be."

Were we to consider only the impaired ability of the plaintiff to earn a subsistence for himself and his family, we might possibly, with the aid of life annuity tables, make a computation on the basis of his earnings before he was injured, which would approximate his damages in that particular. But there are other elements of compensatory damages in this and like cases, which cannot be thus approximated, and which must necessarily be fixed somewhat arbitrarily by the jury, in the exercise of a sound judgment. Among these are damages for physical pain and mental suffering. This plaintiff must go through life maimed, probably with impaired health, and disabled,

in part at least, if not wholly, from earning a subsistence for himself and his family. The mental agony which the ever-present consciousness of his sad condition must produce, is an element to be considered by the jury in awarding damages. Here there is no room for mere computation. The annuity tables furnish no aid, and the capacity of the plaintiff to earn money is of small significance.

It is unnecessary to review the cases on this subject. Many of them are cited in the briefs of the respective counsel. The facts of the various cases are so diverse that but little aid can be obtained by comparing one with another. Compared with some of the cases, the damages awarded to this plaintiff might seem excessive; compared with others, the amount might seem reasonable. There is nothing in this record indicative of prejudice, passion or improper bias on the part of the jury, unless it is evidenced by the award of $11,000 damages. Considering the age of the plaintiff, and his health and condition before and after he was injured; considering the pain and suffering, physical and mental, which he has endured and must continue to endure; considering, also, that he is maimed and disabled for life, — who can say that an award of $11,000 damages is so grossly disproportioned to the injury as to show that the jury were influenced by improper feelings and motives? We confess that we should have been better satisfied with the verdict had the damages been assessed at a sum somewhat less; yet we cannot say that, under all of the circumstances, an honest and unbiased jury might not reasonably conclude that $11,000 would no more than compensate the plaintiff for his suffering and loss, present and prospective, caused by the injury. See *Karasich v. Hasbrouck*, 28 Wis., 569; *Duffy v. Railway Co.*, 34 Wis., 188, and cases cited.

The special verdict finds that the defendant's brakeman was negligent in that he failed to give the plaintiff any warning of the approach of the car; that such negligence was the proximate cause of the injuries complained of; and that the plaintiff,

when injured, was exercising reasonable care. These findings are supported by the evidence, and they demonstrate the right of the plaintiff to recover under chapter 173, Laws of 1875, which was in force when the injuries were inflicted and when the action was brought.

The judgment of the county court must be affirmed.

*By the Court.* — Judgment affirmed.