RUEPING, Respondent, vs. CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Appellant.

*January 14—February 24, 1903.*

*Railroads: Negligence: Personal injuries: Master and servant:*
*Gross negligence: Punitory damages: Compensatory damages:*
*Appeal: Prejudicial error: Measure of damages: Excessive*
*damages.*

1. Where a person is liable in compensatory damages for personal
   injuries wrongfully inflicted by his servant while in the per-
   formance of duties as such servant, the principal cannot be
   visited with damages by way of punishment without proof
   that he directed the wrongful act to be done, or subsequently
   affirmed it.
2. In an action for personal injuries wrongfully inflicted by defend-
   ant's servant while in the performance of his duties as such
   servant, in the absence of proof that the principal has author-
   ized or ratified the wrongful acts, proof of the degree of neg-
   ligence, as to whether ordinary or gross, is improper and
   should not be submitted to the jury.
3. In an action for personal injuries inflicted by defendant's serv-
   ant while in the performance of his duties as such servant,
   where actionable negligence is admitted, and there can be no
   punitive damages, because the principal did not authorize or
   affirm the wrongful act of the servant, evidence of the circum-
   stances of the injury are irrelevant and immaterial, unless of
   such special nature as to present, as one of the elements of
   compensation, sense of wrong or insult arising from an act
   apparently dictated by a spirit of wilful injustice, or a deliber-
   ate intent to vex or degrade.
4. In an action against a railroad company for personal injuries
   caused by a collision, actionable negligence was admitted.

Punitory damages could not be recovered because negligence of defendant's servants was not shown to have been either authorized or approved by it.   Plaintiff's counsel throughout the trial made contentions (with which the rulings of the court were in harmony) that the defendant was guilty of gross and criminal negligence; that mere compensation to plaintiff, in view of the enormity of defendant's fault, would be inadequate, and appealed to the jury to fix compensatory damages with regard to defendant's ability to respond.   *Held*, that although the jury found there was no gross negligence, the erroneous admission of evidence of gross negligence was prejudicial error.

5. In an action for personal injuries suffered in a railroad collision it appeared, among other things, that plaintiff, a man forty-five years old, engaged in office work, suffered a compound fracture of his leg below the knee; that there was no evidence of great pain, or of probable future suffering; that recovery had been rapid; that he was able to attend to his business substantially as before, and that his only permanent difficulty was a looseness in the knee joint, permitting a slipping outward as the weight of the body was thrown upon the imperfect limb.   *Held*, that a verdict for $12,000 damages was largely in excess of what was warranted by the evidence and the law, and that a new trial should be granted unless plaintiff remitted all damages in excess of $2,500.

APPEAL from a judgment of the circuit court for Fond du Lac county: MICHAEL KIRWAN, Circuit Judge.   *Reversed.*

Action to recover for personal injuries.   The claim of the plaintiff was that, June 24, 1900, he was a passenger on defendant's excursion train on the way from the city of Fond du Lac to the city of Green Bay in the state of Wisconsin; that through gross negligence of defendant's servants who controlled the movement of said train it collided with one of defendant's freight trains, by reason whereof plaintiff was severely injured; that his injuries consisted of a severe shock to the system, both bones of his right leg being transversely fractured from the knee down, the nerves and muscles of his body, particularly those of his right leg, being injured, and his being put to great pain and permanently physically impaired, to his damage in the sum of $15,000.

The answer admitted that plaintiff was injured at the time alleged by ordinary negligence of the defendant, but denied that it or its servants were guilty of any greater degree of fault than mere failure to exercise ordinary care. It put in issue the extent of the physical injury and the amount of the damages alleged.

There was no allegation in the complaint that defendant was at fault except in that its servants failed to exercise proper care. There was no allegation that it authorized their conduct or ratified it. The allegations as to gross negligence went no further than to charge that the servants of defendant, while in pursuit of their ordinary business of managing the excursion train and the freight train, were grossly negligent. In the opening address of plaintiff's counsel to the jury he treated the subject of gross negligence as the all-important one to be dealt with by them, and in a manner well calculated to inflame their minds with prejudice against the defendant on account of guilt in operating its trains on the occasion in question with reckless disregard of human life. He stated clearly that the difference between the claim of plaintiff and that of defendant, as regards the mere question of liability, was respecting the degree of its fault,—whether it was merely guilty of ordinary negligence or was guilty of gross negligence. Defendant's counsel, in his opening address to the jury, took issue with plaintiff's counsel as to there being any question of gross negligence in the case. He insisted that there was on trial merely a case of accident from ordinary negligence, where the fault was freely admitted, and the only question for decision was the amount that should be awarded plaintiff as compensatory damages. He suggested that there was no disposition on his side to escape payment of any part of such sum as in the judgment of the jury, guided by the evidence and the law applicable thereto, should be deemed necessary to fully compensate plaintiff for his loss; that de-

fendant desired that plaintiff should receive his full legal
measure of damages.

Upon the trial plaintiff's counsel was permitted, against
objection, to introduce evidence at great length upon the sub-
ject of defendant's negligence, and particularly to establish
the claim that its servants were guilty of gross negligence.
Defendant's counsel insisted from the beginning to the end of
the trial that, since defendant freely admitted its liability
for ordinary negligence,—the only degree of fault actionably
charged in the complaint,—evidence other than to aid the
jury in coming to a correct conclusion respecting the amount
of money necessary to compensate plaintiff for the injuries
received was improper.   Plaintiff's counsel, though pressed
by defendant's counsel to make his position plain before the
court, in order that the court might rule intelligently upon
the objections to evidence, did not distinctly claim that a re-
covery could be had under the complaint for gross fault.
During the discussion of the various objections language was
indulged in at great length by plaintiff's counsel to the effect
that defendant was guilty of criminal negligence and that
plaintiff was entitled to damages by way of punishment.

The court, by the rulings made at all points during the
trial in respect to the subject of gross negligence and permit-
ting the conduct of plaintiff's counsel indicated, allowed him
to succeed in placing before the jury evidence to sustain his
claim that the defendant's servants, in the handling of the
passenger train and in directing its movements, were guilty
of gross negligence.   When the case was ready to submit to
the jury there was no fact in issue on the pleadings in con-
troversy on the evidence in a way to charge defendant with
legal liability.   The only disputed questions were whether
plaintiff was permanently injured, and the amount of money
that should be paid to compensate him for his loss.

The case was submitted to the jury for a special verdict.
The first two questions covered the controverted matters men-

tioned. They were followed by six other questions covering various elements of actionable negligence, ordinary and gross. Instructions were given in respect to each of such questions. The jury found for the defendant as to the claim of liability for gross negligence, answered the questions respecting ordinary negligence in favor of plaintiff and assessed his damages at $12,000. Judgment was entered on the verdict in plaintiff's favor. All matters referred to in the opinion that follows were preserved for review by proper exceptions.

*Edward M. Hyzer,* for the appellant.

For the respondent the cause was submitted on the brief of *Edward S. Bragg.*

MARSHALL, J. This case from first to last was tried upon a wrong theory. Counsel for appellant was clearly right in his position that upon the pleadings the only questions for decision by the jury were these: (1) Are the plaintiff's injuries permanent? (2) What sum of money will compensate him for his loss? Those questions, with proper explanations to enable the jury to understand their scope and the legal principles governing the same, would have covered all the matters required to be solved to settle the controversy between the parties. It may be that the learned counsel for plaintiff really supposed that his client was entitled upon correct legal principles to show all the circumstances of the accident. It may be that he did not consciously lead the learned circuit judge astray by his attitude, suggesting expressly or by implication that under the pleadings respondent was entitled not only to show gross negligence on the part of defendant's servants, as bearing on the question of compensatory damages, but for the purpose of charging appellant with punitory damages, notwithstanding there was no claim in the complaint or in the evidence that defendant authorized the acts complained of or ratified them. However, it would be a reflection upon the distinguished counsel for respondent, which

we hardly feel justified in suggesting, to treat this case as if he was misinformed in respect to the fact that the settled judicial policy of this state is to the contrary, and has been for some over forty years. While if the duty devolved upon us now to demonstrate the correctness of such policy, tested by principle and authority, it would not seem to be a specially difficult task, we shall not enter into any discussion thereof, since the matter has been settled by a long line of adjudications of this court. In *Milwaukee & M. R. Co. v. Finney,* 10 Wis. 388, decided in 1860, it was held that though a person is liable for compensatory damages for injuries wrongfully inflicted by his servants upon another while in the performance of their duties as such servants, the principal cannot 'be visited with damages by way of punishment without proof that he directed the wrongful act to be done or subsequently affirmed it; that without such authorization or ratification the degree of negligence, as to whether ordinary or gross, has no proper place in the controversy as to the measure of the plaintiff's right to redress and should not be submitted to the jury.' The same principle, so far as applicable, ruled *Bass v. C. & N. W. R. Co.* 36 Wis. 450; *S. C.* 42 Wis. 654; *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Eviston v. Cramer,* 57 Wis. 570, 15 N. W. 760; *Patry v. C., St. P., M. & O. R. Co.* 77 Wis. 218, 46 N. W. 56; *Mace v. Reed,* 89 Wis. 440, 62 N. W. 186; *Robinson v. Superior R. T. R. Co.* 94 Wis. 345, 68 N. W. 961; *Bryan v. Adler,* 97 Wis. 124, 72 N. W. 368; *Gaertner v. Bues,* 109 Wis. 165, 85 N. W. 388. In all the later decisions of the court such principle was deemed so firmly established that a mere reference to the previous adjudications was all that was deemed necessary in applying the same. In *Robinson v. Superior R. T. R. Co.* this language was used:

"This court has repeatedly held, in effect, that exemplary damages can only be recovered against the principal for the

wrongful and malicious act of the agent, when such act is either authorized or ratified by the principal."

In *Gaertner v. Bues,* this language was used:

"There is no finding that such acts were authorized or ratified by the defendant. Without this, there can be no recovery as and for punitory damages. Such damages are given only by way of punishing the malice or oppression, and are usually graduated by the intent of the party committing the wrong. When the action is against the principal for the act of an agent, the question of their assessment cannot properly be submitted to the jury, unless there is evidence connecting the principal with such intent on the part of the agent."

Counsel occupied considerable space in his brief in arguing that a principal is responsible for the negligence of his agent in the pursuit of his duties resulting in an injury to another, and therefore that, necessarily, on principle and authority, all the circumstances attending the act may properly be shown in an action to recover for the wrong, whether the proper measure of damages be such as will merely compensate such other for his actual loss or the jury be permitted in their discretion to allow an additional sum by way of punitory damages. True, a principal is responsible for gross negligence under the circumstances stated. That is supported by all the cases cited. But not responsible for more than compensatory damages without the element of authorization or ratification by him. The measure of damages is the same without such element, whether the degree of fault be ordinary or gross negligence. So, in such case, the circumstances of the injury are entirely immaterial where actionable negligence is admitted, unless they are of such special nature as to present, as one of the elements to be compensated for, sense of wrong or insult arising from an act apparently dictated by a spirit of wilful injustice or a deliberate intent to vex or degrade. It is held that mental suffering of that character is a proper subject for compensatory damages (*Grace v. Dempsey,* 75

Wis. 313, 323, 43 N. W. 1127; *Duffies v. Duffies,* 76 Wis. 374, 386, 45 N. W. 522); that all mental suffering, coupled with physical injury—that form which springs merely from insult or wilful wrongdoing as well as that caused by physical pain—is in a proper case a legitimate subject to be considered in awarding compensatory damages. The cases holding generally that the circumstances attending the infliction of an injury in an action to recover compensation therefor are material regardless of whether liability is admitted, are not universally restrained by the language of the opinion within their legitimate limits. It seems that it needs only to be suggested that evidence of gross negligence, where there can be no punitory damages as matter of law, or damages for mental suffering caused otherwise than by physical injury, is irrelevant; that it is liable to be prejudicial where, in the very nature of things, it is plain that there was no mental suffering induced by insult to be compensated for. Counsel calls our attention to the opinion of Mr. Justice DAVIS in *Milwaukee & St. P. R. Co. v. Arms,* 91 U. S. 489, where this language is found:

"As the question of intention is always material in an action of tort, and as the circumstances which characterize the transaction are, therefore, proper to be weighed by the jury in fixing the compensation of the injured party, it may well be considered whether the doctrine of exemplary damages cannot be reconciled with the idea, that compensation alone is the true measure of redress."

An examination of the entire opinion will show that the materiality of intention which the court was talking about was in respect to whether the defendant was liable for punitory or only compensatory damages. As an abstract proposition it seems too elementary to warrant any very extended discussion, that as regards any element of compensable injury except mental suffering caused by insult or something of that sort, the intent of the wrongdoer neither enhances nor

mitigates the loss.   There was no attempt here to recover for
any such element.   The circumstances of the case show that
no such element entered into it.   Therefore, there was clearly
no justification for presenting the subject of gross negligence
to the jury for consideration.

We cannot, in justice to the learned circuit judge who pre-
sided at the trial and the distinguished counsel for respond-
ent, omit to notice *Lawson v. C., St. P., M. & O. R. Co.* 64
Wis. 447, 24 N. W. 618, to which counsel refers us.   The
opinion there, taken as it reads, justifies the conduct of the
trial.   However, it seems that no such effect should be given
to the case.   There was no claim in the complaint there of lia-
bility for gross negligence.   The essential allegation to sup-
port such a claim was wanting.   There was no proof offered
or received, so far as we can discover in the report of the case
or the printed matter used upon the argument, suggesting
gross negligence.   There was no element of injury of a com-
pensable character that would not have existed regardless of
whether the fault of the defendant was ordinary or gross neg-
ligence.   Yet, the trial court, misconceiving what constitutes
gross negligence—not understanding that it requires actual
intent to injure, or that disregard of human life or of conse-
quences evincing a willingness to produce harmful results,
sometimes called intent in law and equivalent to intent in
fact (*Ryan v. La Crosse City R. Co.* 108 Wis. 122, 83 N. W.
770; *Milwaukee & St. P. R. Co. v. Arms,* 91 U. S. 489)—
directed the jury to convict the defendant of such fault be-
cause, as was said, the evidence established it, and the meas-
ure of damages was no greater than would have resulted from
ordinary negligence, the degree of fault admitted in the an-
swer.   The error was not harmful, because there was nothing
in the case upon which the court predicated his decision tend-
ing by reason of the ruling to enhance the recovery, and the
jury were distinctly restrained, in assessing the damages, to
such compensation as would fairly remunerate the bene-

ficiary of the cause of action for her pecuniary loss. This
language was used in deciding the case:

"The respondent was allowed to show the circumstances of
the collision, against the objection of the appellant, in order
to show that the servants of the company were guilty of *gross*
negligence. According to the brief of the learned counsel of
the appellant, 'it made no difference in the case so long as de-
fendant was negligent. If plaintiff showed herself otherwise
entitled to. recover, she could only be defeated by showing
negligence on her husband's part.' This being so, proof of
gross negligence was immaterial and could do no harm. But
we think proof of the accident and its circumstances was.
proper, and that it justified the finding of gross negligence.
The negligence of the company was charged in the complaint
and admitted in the answer, but its degree was an open ques-
tion for the jury."

Since, as the court said, in effect, whether the wrong of the
defendant was characterized by the essentials of gross negli-
gence was immaterial to the case, and ordinary negligence
was charged and admitted, rendering defendant liable for full
compensatory damages to the beneficiary of the cause of ac-
tion, and there was no other element of compensable loss in-
volved than such as was of a distinctly pecuniary character,
we must confess that the court was wrong in saying that the
degree of the defendant's fault was a proper subject for proof
and for consideration by the jury. It seems that the furthest
the court should have gone was to have said that, the liability
of the defendant for the pecuniary loss suffered by the widow
of the deceased being admitted and the jury having been
limited in the assessment of damages to such elements, evi-
dence respecting the circumstances of the injury was unnec-
essary, and, as regards mere degree of negligence, was error,,
but harmless error.

We will say in passing that we do not lose sight of the
language called to our attention in *Bass v. C. & N. W. R. Co.*
36 Wis. at page 462, to the effect that the mere inadvertent
placing of a railway train in charge of negligent or careless

agents, or that any negligence by the agents of a railway company in charge of one of its trains, "may well deserve the epithet of gross." In view of the long line of decisions in this state regarding the essentials of gross negligence, it. would hardly seem that such language, quoted, as it was, from another jurisdiction, and used merely *arguendo,* should' be referred to as authority.

Counsel for respondent insists that if it was error to admit evidence of gross negligence of defendant's servants and to try the case on the theory that defendant might be guilty of that degree of fault, it was not prejudicial error, because the finding on that was in its favor, citing *Stone v. C., St. P., M. & O. R. Co.* 88 Wis. 98, 59 N. W. 457. That would be true if there were no indications in the record that defendant was prejudicially affected notwithstanding. A universal rule cannot be predicated on *Stone v. C., St. P., M. & O. R. Co.* and similar cases. The question of whether error of the sort in question is harmful or not must necessarily be determined very largely by the facts of each particular case.

The persistence with which counsel for respondent, from his opening address to the jury till the case was finally submitted to them, contended that appellant was guilty of criminal negligence and that mere compensation to plaintiff for his loss would be inadequate to the enormity of its fault, and the extent to which rulings were made in harmony therewith, could hardly have resulted otherwise than to unfit the jury to fairly consider and decide the vital issues in the cause. Such conduct of the trial went to an extraordinary length. A few excerpts from the record will amply show that. Speaking of the responsible officers of the defendant, who were entirely innocent of any criminal fault or moral turpitude, or personal fault at all, this language was used by the learned counsel:

"If Puck were to publish a cartoon of these distinguished gentlemen in procession on that Sunday as they came from church—I have no doubt they were all at church—Wall street

was not running that day—he would picture this long line of mourners and grievous characters with tears dropping down from their eyes, and put under it what they sometimes do to give point to the caricatures, 'We wonder what this will cost.' Then it will be left for anybody else to determine what they meant when they said, 'We wonder what this will cost,' and whether it was the tears that were shed for what it might cost, or whether the tears were shed because they had got caught once when it was apparent that they would be held responsible."

The great wealth of the defendant and the amount of money damages requisite to be visited upon it in order that it might feel the smart of the legal lash and be conscious of the enormity of its offense, was treated in part thus:

"These impositions by way. of fine for example's sake, punishment's sake, to operate as a warning to protect the body politic that travel to and fro, in this case over railroads—the same rule that applies outside of railroads applies here—correspond the punishment that you impose with the ability to pay the money that you impose and then you have an easy, graded movement—as easy as you ever can have—in fixing either compensatory or exemplary damages. . . . Now as a public example, in the way of punishment, how much more, how many more thousand in addition shall you give, so that when the blister is administered, it will draw. That is what we want for example's sake and for punishment's sake."

Note the appeal to the jury to fix compensatory damages, having regard to the ability of the defendant to respond. What justification can there be suggested for conduct so calculated as that to inflame and pervert the minds of an ordinary jury assembled to perform so simple a duty as that of determining the money damages necessary to compensate for loss suffered; or for the use in addressing the jury of language like this respecting the circumstances of the accident:

"As I said to you, some were launched into the other world; others had legs broken or ribs broken; every ailment, very nearly, that could be inflicted upon them came upon them. They spent their summer in pain and misery; and be-

came thence, some of them, as I think I shall show you,
. . . crippled for life."

Or this language in respect to the engineer who handled
the train:

"Ran in upon that engine, crashed there in its force and
rebounded, one car telescoping into another, sending, as we
have shown, five or six unshrived souls to their Maker, and
left a large number, whatever that number may be, crippled
for life."

Pages might be covered in presenting a full history of the
trial with expressions of the same sort, tending to unfit any
ordinary jury for doing justice in the case.

It is with much regret that we are, in the discharge of our
duties, required, as above, to give even a few glimpses of the
unhandsome features of the trial of this case. It is to be re-
gretted that counsel so distinguished should have so indulged
his personal mastery of a situation as to lead so conscientious
a judge as the one who presided upon this trial so far astray.
It is to be regretted that counsel will do that under any cir-
cumstances. Counsel should never forget that they are of
the instruments provided by law for the administration of
justice,—officers, as it were, in the eye of the law, charged
with a high degree of responsibility respecting the protection
of the rights of their clients within the legitimate boundaries
of the controversy they are called upon to present for adjudi-
cation, and charged as well with a high degree of responsi-
bility not to purposely or negligently go outside such bound-
aries. Within that sphere they may, with all their learning,
ability and industry, present their client's claim; but they
will step outside thereof at the peril of sacrificing the very
interests they are in duty bound to safeguard.

From what has been said we must conclude that there was
not a fair trial of this case. If it appears probable that the
verdict was enhanced thereby, the judgment must be reversed.
The jury found for the defendant on the question of gross

negligence. That is a point in favor of the judgment. How-
ever, as counsel for defendant suggests, there is a strong indi-
cation in the amount of the verdict that, while the jury ac-
quitted defendant of gross negligence, they were ruled by the
idea pressed upon them throughout the trial that damages
should be assessed sufficiently high to roundly punish the de-
fendant when they came to assess the plaintiff's compensatory
damages. The indications are that the idea of damages as
mere compensation for loss sustained was too involved in
their minds with the idea of punishing appellant to enable
them to intelligently or dispassionately pass upon the vital
questions in the case.

The evidence as regards the nature of the plaintiff's in-
jury and the result was to the following effect: The large
bone of the right leg below the knee was broken transversely
downward. There was a displacement, giving the injury the
character of what is called a compound fracture. It was not
specially painful. Plaintiff recovered, so far as probably he
ever will recover, in a few months. He was forty-five years
of age when injured. His business was mainly office work.
He was sufficiently restored to enable him to attend to such
business substantially as formerly. The restored limb is not
quite as strong as before. It is not wholly in its normal con-
dition and never will be. The ligaments at the knee joint are
so impaired that the joint is more than normally mobile.
That permits a slipping outward as the weight of the body is
thrown upon the imperfect limb. He is required, in using
his limb, to use care and favor the impaired member. He
has not full control of the limb because, as indicated, the liga-
ments of the knee are to some extent permanently relaxed. He
testified that his only difficulty in using his limb was that
there was a looseness in the knee joint permitting the leg to
bow out about an inch as he threw his weight upon it, and
that it troubled him some in moving about.

An examination of the numerous cases that have come to this court furnishes clear indication that $12,000 for the loss above indicated is far beyond what is legitimate. Plaintiff was not prevented from going about his customary affairs more than six months. There was no special circumstance distinguishing the injury from that of an ordinary compound fracture of one of the legs below the knee. There was no extensive laceration of the tissues of the limb. There was no extraordinary amount of pain suffered. There was a pretty rapid recovery, and a complete healing of the wounds. The permanent impairment of earning power is not large. There is no evidence of reasonable certainty of future pain and suffering from the injury. The amount awarded is equivalent to an annuity sufficient to enable plaintiff, with an ordinary family, to live in ordinary circumstances during his natural life. The mere statement of that is sufficient to demonstrate that the verdict is unreasonable in a high degree. A reference to verdicts in other cases will be of some service in determining how far the one in question is out of harmony with what is reasonable; but there is, after all, no test to be applied but that of human judgment. An examination of a large number of cases fails to bring to our attention one where anywhere near as large a verdict as the one before us has been sustained for a similar loss. Instances may be found in our books where there was the loss of a leg, with suffering probably as great as that of plaintiff, and where there was as great or greater diminution of earning power, and the amount of compensation allowed was from $1,600 to $5,500. In *Karasich v. Hasbrouck,* 28 Wis. 569, there was a verdict for $5,500. The plaintiff, a man twenty-eight years old, had two ribs broken. One leg was so badly bruised and wounded that pieces of the bones subsequently worked out through the wound. He was confined to his bed for some days, was under a surgeon's care for months, and was rendered permanently disabled from following his usual occupation, and made rea-

sonably certain to suffer considerable pain for the rest of his life. In *Duffy v. C. & N. W. R. Co.* 34 Wis. 188, a strong, healthy man sixty-four years of age was very severely and permanently injured, the injury leaving him to some extent a cripple for life. The amount of damages awarded was $1,600. In *McMahon v. Eau Claire W. W. Co.* 95 Wis. 640, 70 N. W. 829, $5,000 was allowed for a severe permanent injury to a young man, a member of the city fire department. In *Cummings v. National F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665, a middle-aged man was rendered helpless for life. The amount awarded to him was $8,000. In *Propsom v. Leatham,* 80 Wis. 608, 50 N. W. 586, a laborer in good health, with a good prospect of long life, was seriously and permanently injured, one of his legs being broken, and after he was cured so far as practicable, the leg being left in a partially deformed condition, was awarded $1,800. In *Mc-Coy v. Milwaukee S. R. Co.* 88 Wis. 56, 59 N. W. 453, the sum of $4,000 was awarded for the loss, by a boy seventeen years old, of his left arm. In *Baltzer v. Chicago, M. & N. R. Co.* 89 Wis. 257, 60 N. W. 716, a recovery of $10,000 was allowed for loss of the left arm of a boy nineteen years of age. In *King v. City of Oshkosh,* 75 Wis. 517, 44 N. W. 745, $600 was allowed to compensate a man for an injury causing considerable expense, loss of time, and a somewhat permanent impairment of earning power. In *Nadau v. White R. L. Co.* 76 Wis. 120, 43 N. W. 1135, $9,650 was allowed for an injury to a strong young man. His leg was crushed and had to be amputated above the knee. These examples, though including cases of injuries quite dissimilar in kind to the one suffered by paintiff, furnish a pretty good index of the amount usually found necessary in the administration of justice, to compensate for pain and lost time incident to an injury and impaired earning power. We may well look, not so much to the particular nature of the injury in the cases, in comparing them with the one before us as to the magnitude

of the elements of pain, loss of time, expense, diminished earning power, and the age of the subject. Those cases strongly support our conclusion that the verdict of the jury here was either the result of passion and prejudice or that the case was not intelligently considered by the jury; that they were swung away from the true basis for the assessment of damages by the errors we have discussed; that they thought as much or more of roundly punishing the appellant as of requiring it to make good to respondent the loss he sustained, upon a common-sense basis.

There being no controversy but that appellant is liable to respond for compensatory damages, this is a proper case for this court, upon reversing the judgment, to name a sum which the plaintiff may accept and terminate the litigation if he sees fit. We will do that, being guided by the rule that, since defendant is left with no option in the matter, in order to avoid invading its substantial rights as to a judicial assessment of the damages it should pay, the sum named must be as low as in any reasonable probability a jury of twelve men rightly instructed as to the law, and with a proper conception of their duty in the matter, would be liable to award. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644. It is our best judgment that the defendant ought not to be compelled under that rule to submit to the payment of more than $2,500. That seems small, compared with the verdict of the jury, but, unlike most cases where this court has been called upon to exercise its power to give parties an opportunity to end their litigation without a new trial, the verdict furnishes here no sort of assistance. A jury might reasonably assess plaintiff's damages as low as $2,500. They might, of course, assess the same somewhat higher. The range of human judgment in respect to such matters is quite large. It is a very difficult matter to set boundaries beyond which it cannot go. It cannot be done at all with any very great degree of certainty. The

best that can be done is to apply unbiased judgment and ex-
perience to the evidence. We have done that with the result
suggested. If plaintiff does not see fit to accept the amount
named, the way is open for him to appeal to another jury.

There is nothing further that need be said in this case. It
is with much regret that we have been compelled to treat it
as we have. We entertain a high regard for the learned,
painstaking and conscientious judge who tried the case, and
for the distinguished counsel who conducted the case for re-
spondent. For the former, we can say it is but natural to
lean somewhat for support in the course of a hotly contested
trial, without time for reflection, upon eminent counsel,
whose standing at the bar and whose large experience is an
assurance against his consciously, or at all, proceeding to
effect outside the legitimate boundaries of the case, especially
in moving the judicial mind to the commission of error.
But after all lawyers are not judges. Their sphere of ac-
tion is different. However distinguished they may be, the
only really safe way in any case is for the independent judg-
ment of the judicial head of the court to dominate the trials.
Counsel are liable to use all power they are masters of, if per-
mitted, for the attainment of valuable results for their
clients. The court must necessarily at all times himself con-
trol the scales of justice, keeping out those illegitimate make-
weights that have no business therein, but which able counsel
are liable, if not restrained, to throw into the balance upon
their side of the case. The court can do that and still give
counsel ample range for all their learning, ability and ex-
perience within the limits of the case, while repressing, and
if necessary suppressing, excursions outside thereof.

*By the Court.*—The judgment of the circuit court is re-
versed. The cause is remanded for a new trial unless the
plaintiff elects, by notice in writing served upon the attorney
for the defendant within twenty days after the filing of the
*remittitur* in the office of the clerk of the trial court, to take

judgment for the sum of $2,500, with costs in such court subsequent to such filing. If such election be made, judgment may be rendered accordingly upon application therefor to such court.