Foss, Appellant, vs. Heineman and another, Respondents.

*November 16—December 6, 1910.*

*Contracts: Breach: Measure of damages: Sales: Agreement for re-
sale.*

1. "Where two persons have made a contract, which one of them
   has broken, the damages which the other ought to receive in
   respect of such breach of contract should be such as may fairly
   and reasonably be considered as either arising naturally, *i. e.*
   according to the usual course of things, from such breach of
   contract itself, or such as may reasonably be supposed to have
   been in contemplation of both parties, at the time they made
   the contract, as the probable result of the breach of it."
2. The foregoing applies to all ordinary cases, but there is this com-
   mon exception, in case of there having been special circum-
   stances, mutually known to both parties at the time of making
   the contract; then the damages resulting from the breach of
   such contract, which they would reasonably have contemplated,
   would be the amount of injury ordinarily flowing from a breach
   of contract under such special circumstances.
3. The result of the primary rule is, that, in case of a breach of
   contract to sell and deliver personal property, there being no
   mutually known special circumstances existing at the time of
   making the contract, and no special circumstances occurring
   subsequently to supersede or vary the ordinary rule; the ex-
   ecutory vendee is entitled to recover the difference between the
   purchase price and the fair market value at the agreed place
   and time for delivery with interest from the time of the breach.
4. The rule of damages aforesaid for all ordinary contracts, no
   agreement having been made to the contrary, is written into
   them by operation of law at the time of making; the result
   waits upon the breach and application of the rule to the then
   existing conditions.
5. The reason of any rule or measure of damages is that, a person
   wronged by breach of contract should be as fully as practicable,
   compensated for his loss; so when the rule applicable to a sit-
   uation does not reasonably so result, it is superseded or varied
   by some exception, to effect the policy of the law.
6. If a person agrees to sell and deliver to another at a specified
   time, price, and place, certain personal property, and such
   other, thereafter, agrees to resell and deliver at a specified ad-

vanced price, to a third person, all such property received from such person, thereby saving himself from any claim for damages because of being unable to deliver to the second vendee the whole thereof, and such person defaults, such other's recoverable damage for the breach is the difference between his agreed purchase and selling price.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Lincoln county: JAMES O'NEILL, Judge.    *Reversed.*

Action to recover $1,694.59 and interest alleged to be a balance due plaintiff for lumber sold by him to defendants.

Defendants answered, among other things, in substance, as follows: Plaintiff sold the lumber to the latter under a contract whereby, for a stipulated price per thousand feet according to specified grades and kinds, he promised to procure, during a specified period, specified kinds of saw logs to the amount of not less than one nor more than three million feet, and manufacture the same into lumber at his sawmill and care for the manufactured product in a specified way and deliver the same, either in the rough or mill worked, on board cars by a specified date. After making said contract defendants bound themselves to resell all the lumber they might obtain under such contract to C. H. Worcester Co. at prices in excess of those of the purchase and to that extent made over their contract to such company, in consideration of being paid such excess price. Thereafter defendants delivered to such company all lumber they obtained under the contract with plaintiff, but in breach thereof he neglected and refused to deliver the agreed minimum amount by 435,841 feet, to their and C. H. Worcester Co.'s damage in the sum of $2,615. Before commencement of the action whatever interest said company had in the claim for damages against plaintiff, was assigned to defendants. Such facts were appropriately pleaded as a counterclaim and judgment demanded for $1,014.65, being the excess over the amount conceded to be due plaintiff upon his cause of action.

The action was tried by a referee who found the facts substantially as alleged in the counterclaim as regards the obligations of the plaintiff and the breach. The amount of lumber which plaintiff failed to deliver, as agreed upon, was fixed at 439,000 feet. The referee further found that, at the date of the contract with plaintiff, defendants, in contemplation thereof, made the resale to C. H. Worcester Co. and that the recoverable damages were, therefore, limited to the profit defendants lost by reason of not being able to deliver the 439,000 feet of lumber to their vendee. On that basis the referee concluded, plaintiff was entitled to recover according to the prayer of the complaint, less $725.94 and interest from the time of the breach.

On proceedings to confirm the report, the only controversy was as to whether the referee assessed the damages according to the proper rule. That was decided in defendants' favor, the court holding that they were entitled to charge the plaintiff with the difference between the price they agreed to pay for the 439,000 feet plaintiff failed to deliver, and the fair market value thereof at the agreed place of delivery and time of the breach, with legal interest, or $3,039.52.

The decision was reached upon the theory that, though when the contract was made between plaintiff and defendants, it was mutually understood that the lumber was bought to be resold, the former did not know to whom such resale would be made nor the terms thereof agreed upon, or to be agreed upon; that there were no special circumstances entering into the transaction; that it was like an ordinary purchase of goods by a middleman to replenish or make up his stock in trade for resale in the regular course of business, and, therefore, that there was no basis for applying any other than the ordinary rule of damages. The findings of the referee were changed accordingly and judgment ordered in defendants' favor for $1,612.17, with costs.

For the appellant there was a brief by *Van Hecke & Fisher,* and oral argument by *W. E. Fisher.*

For the respondents there was a brief by *Smart, Van Doren & Curtis,* and oral argument by *E. M. Smart.*

MARSHALL, J.   Did the court apply to the facts the right measure of damages?   That is the sole question for solution.

As we view the case the referee reached a conclusion without fully appreciating one feature of the rule in *Hadley v. Baxendale,* 9 Exch. 341, and the court reached a different conclusion without fully appreciating the real basis for such rule, that no rule should be extended beyond the reason for it, and that the very reason often gives rise to an exception when the generality of the situation to which the rule applies is so departed from, in the peculiarities of the particular situation, as to render the way which is ordinarily productive of justice, productive of the opposite.

We shall not discuss at any considerable length the general rule for measuring damages for breach of an executory contract of sale of personal property and the common exception thereto.   The formulation of the principle thereof is most notably found in *Hadley v. Baxendale, supra.*   As there phrased it has been adopted by this court and courts in general.   *Cockburn v. Ashland L. Co.* 54 Wis. 619, 12 N. W. 49; *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119.   The party wronged is entitled to such sum from the wrongdoer as will compensate him for damages arising "according to the usual course of things" from the wrong and such as is "reasonably to be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it."   In harmony with that principle, which fits all ordinary cases of breach of an executory contract for sale of personal property, it is presumed that, at the inception of an agreement, the parties mutually contemplate that, in case of failure of a vendor to deliver, the vendee will be damnified to the extent of the difference between the contract price and the fair market value of the subject of the transaction at the time and place for such

delivery, and such presumption is so strong that it is a rule of law governing the case, if there is a market price at such place, in the absence of something so out of the ordinary, known to both parties at the time of contracting, that they must be presumed to have agreed with reference thereto.

Extraordinary situations so mutually known and contracted with reference to, are liable to occur, and that gives rise to the necessary supplementary rule that, in any such a case, the parties are presumed to have had, at the inception of their agreement, in mutual contemplation as a result of the breach of it, such damages as may reasonably and fairly be considered as arising according to the usual course of things from such breach under the special circumstances.

The special situation to which the exceptional rule of damages is most generally invoked, was fully discussed in *Guetzkow Bros. Co. v. A. H. Andrews & Co., supra,* i. e. it is where a person after having contracted to sell an article not commonly readily obtainable in the market, to another, contracts with a third person, who knows of such executory sale, for such article at a less price. The ordinary rule is generally supposed to fix the minimum of damages and the exceptional rule to enable the injured party to recover such additional amount as will fully compensate him for the injuries which fall within the scope of mutual contemplation at the inception of the agreement as probable results of a breach of it, in view of special circumstances then mutually known. Whether it may be invoked by the wrongdoer to reduce his liability below what it would be in an ordinary case, as well as by the wronged party for the opposite effect, is not necessary to here decide, as we view the case. The referee evidently thought to the contrary and decided accordingly, upon the theory that defendants sold the lumber before they purchased the same, or had done so substantially, and that the contract with appellant was for the purpose of carrying out a substantially already agreed upon trade with another party. The facts seem to be otherwise.

As the trial court found, it satisfactorily appears that respondents contracted with appellant for lumber for the purpose of obtaining stock to sell in the regular course of business; not for the purpose of supplying lumber to a customer upon an existing executory contract of sale.   There were no extraordinary circumstances existent at the inception of the contract, either mutually known to the parties or otherwise. The mere fact that it was mutually understood that the lumber was bought to be resold in the regular course of respondents' trade, did not create a special situation any more, as the trial court held, than does any common occurrence of a purchase by a middleman, who buys to sell in merchandising operations.

From the foregoing it is clear that the rule of damages which became a part of the contract, usable under all ordinary circumstances in case of the breach of it, was the ordinary one above indicated, and the one which the trial court applied to the case.   Did the logic of the situation justify such application ?   That is the question.

It must be remembered that the law of a contract in respect to the rule of damages, governing in case of the breach of it, till superseded by some exceptional circumstance thereafter happening, is definitely fixed and becomes a part of the agreement when made.   We are now speaking of the rule or measure of damages, not what such rule or measure will produce. That waits upon the breach and application of the rule to the conditions then found, but the rule itself is agreed upon in the nature of an impersonal arbiter, at the time of and in the contract itself.   All the authorities are to the effect that the damages are such, and only such, as are referable to the situation from the standpoint of mutual knowledge when the minds of the parties finally met contractually.   That has been emphasized, time and again, in the adjudications of this and other courts, and it is the very vital principle of the rule in *Hadley v. Baxendale, supra; Guetzkow Bros. Co. v. A. H. Andrews & Co., supra; Serfling v. Andrews,* 106 Wis. 78, 81,

81 N. W. 991; *Seeman v. Biemann,* 108 Wis. 365, 375, 84
N. W. 490; *Malueg v. Hatten L. Co.* 140 Wis. 381, 385, 122
N. W. 1057; *Loehr v. Dickson,* 141 Wis. 332, 337, 124 N. W.
293; *Lincoln v. Chas. Alshuler Mfg. Co.* 142 Wis. 475, 480,
125 N. W. 908.

In the foregoing and many other cases that might be re-
ferred to, this court has said, in terms or effect, the rule of
damages is written into the contract when made, the result in
case of a breach is dependable upon applying that rule to the
situation as it exists at the time of the breach.   Therefore,
as indicated, in case of a breach of an executory contract of
sale of personal property, there being no special circumstances
rendering more than ordinary damages presumably within the
contemplation of the parties at the time of making the con-
tract as likely to occur from the breach of it, the limit of legal
damages is the difference between the market value of the
property at the time and place of delivery, if there is such
market value, otherwise the market value at a point as near
thereto as practicable, and the price the executory purchaser
agreed to pay therefor with legal interest from the date of the
breach.

Underlying the foregoing rule is the basic reason thereof,
that he, who by his fault in respect to performing contractual
obligations causes injury to the one contracted with, should,
in justice, make that one whole as regards the result of such
fault, so far as in legal contemplation he must be held to have
anticipated such result when he contracted, as a probable con-
sequence of such fault.   The idea, it will be seen, which vi-
talizes and limits the whole system of recoverable damages
for breach of contract, is to measure out justice upon a com-
mon-sense basis; to compel the wrongdoer to respond within
the written or unwritten calls of the agreement with an equiv-
alent for the loss inflicted.   Compensation for loss, not penal-
izing for the fault to the enrichment of the person wronged,
is the right of the matter in contemplation of law.   The law
does not concern itself with either profit or loss to the person

committing the fault, though, doubtless, reparation for the loss, on principle, should not be minimized to fit the real loss to the person injured, for the enrichment of the wrongdoer.

From the foregoing it would seem that whenever a situation is created subsequent to the making of a contract, either by mutual acts of the parties, or by the act of either, so that a breach by the executory vendor, under the rule incorporated into the contract, would yield a profit to the executory vendee, the reason for such rule is thereby superseded; suspended as to the particular case, calling for an exceptional rule in harmony with such reason. In other words, as to a peculiar situation to which the dominant thing and the rule springing therefrom apply for all ordinary cases cannot be applied with the result such dominant thing calls for, from the standpoint of mutual justice; that is to put the person suffering from the breach in the same position he would have been but therefor, the latter should prevail regardless of whether the history of decided cases furnishes any precise precedent to fit the particular situation or not. That is the real spirit of *Hadley v. Baxendale,* 9 Exch. 341, as elucidated in *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119, and enlarged upon as an elementary principle in 1 Sutherland on Damages (3d ed.) § 12, relied upon by the referee in reaching his conclusion.

The following, supported by authority, was promulgated by the elementary writer and challenged the attention of the learned referee:

"The principle of just compensation is paramount. By it all rules on the subject of compensatory damages are tested and corrected. They are but aids and means to carry it out; and when in any instance such rules do not contribute to this end, but operate to give less or more than just compensation for actual injury, they are either abandoned as inapplicable or turned aside by an exception."

In connection with that the writer paid heed to the existence of arbitrary rules "which have been adopted from con-

siderations of policy, ostensibly on the basis of compensation, which really fall short of that object in a conservative deference to possible consequences to the party who must respond to the demand," because there are possible damages; often not determinable by any definite standard and not reasonably within the contemplation of contracting parties at the time of contracting as probable results of a breach. But no such deference is ordinarily indulged in to the manifest enrichment of one party, nor deference to the other to his manifest enrichment beyond the ordinary fruits of his contract under all the circumstances.

. Here we have the situation to which the logic of what has been said seems to apply. The respondents, subsequently to their contract of purchase, resold at a certain advance on their purchase price, not all the subject of purchase, but all thereof which they might obtain by performance by their executory vendor. Thereby they liquidated the possible amount of their probable damages by failure of such vendor to fully perform. Whether,—had such vendor breached his contract for the purpose of taking advantage of the advance in market price of the lumber over the selling price to respondents' executory vendee; characterizing the breach by a species of fraud,—he could profit by the terms of the resale contract, which fixed the actual loss of his vendee at much less than would have been the result in an ordinary case,—we have not before us; though that he should not would seem to be in harmony with the legal principle of justice suggesting the legitimate basis of administration. The facts seem to be that there was no such moral unfairness in this case. The appellant did not reserve a part of the stock he agreed to turn over for the purpose of reaping an advantage thereby. He furnished all he accumulated for the purpose of carrying out his contract, and used reasonable diligence in respect to the matter, so far as there is any evidence in the record. Under those circumstances should he suffer loss by being required to pay respond-

ents a greater amount than the profit the contract with him would have yielded under the special circumstances, had it been fully performed? Since, as the referee suggested, respondents incapacitated themselves from selling the lumber at the market price, and at the same time protected themselves from loss by appellant's failure to perform, in excess of the difference between their purchase and selling price, can they, nevertheless, have the benefit of the difference between the former price and the market value at the time of the breach and agreed place of delivery? Can their foresight in insuring themselves against loss in excess of a fixed amount in case of the market price going down and appellant defaulting, still leave them in a position to mulct the latter just the same, upon the theory that he would otherwise gain by such insurance, which he had no hand in effecting? On principles applicable to contractual matters, it is considered that these questions must be answered in favor of appellant.

From the foregoing we deduce the following auxiliary to the ordinary rule and the common exception made conspicuous in *Hadley v. Baxendale, supra,* and adopted as indicated, by this and other courts: Where an executory vendee, subsequent to making his agreement of purchase, contracts to resell the subject of the transaction at an advanced price, protecting himself against possible loss in case of his being prevented from performance by default of his vendor, by agreeing to deliver to the second vendee only such part of such subject as comes to him from such vendor, and the latter without bad faith fails to perform, the measure of damages of such executory vendee cannot exceed the difference between his agreed purchase and selling price.

Thus we reach the same result as did the referee but on a somewhat different line of reasoning though upon substantially the same principles. The reasoning is different, in that the circumstance supposed by the referee to exist,—that respondents made their contract to sell before they made the con-

tract to purchase, though that situation was not known to appellant when such contract to purchase was made,—did not exist in fact, does not cut any figure in the matter; and, further, the circumstance that the lumber was, to the knowledge of appellant, at the time of such contract of purchase, designed for resale, does not count in the result. The situation as to the facts is found precisely as the learned circuit judge found them to be, but the ordinary rule and common exception to fit special circumstances, are subject to supersession by an auxiliary rule to fit situations to which such ordinary one and common exception, cannot be applied without violating their own basic reason.

*By the Court.*—The judgment is reversed, and cause remanded with directions to enter judgment in accordance with the conclusion of the referee, with costs.