NELSON, Respondent, vs. GODDARD & COMPANY, INCORPO-
RATED, Appellant.

*December 7, 1915—January 11, 1916.*

*Landlord and tenant: Lease with option to buy is not a sale: Parol
evidence affecting writings: Agreement to give up leased prem-
ises if sold: False statement of sale: Voluntary surrender:
Measure of damages for breach: Prospective profits: Excessive
damages.*

1. A lease giving the lessee an option to purchase the premises at a
specified price within a prescribed time and to apply the sum
paid for rent as a payment on the purchase price, is not a con-
tract of sale.

[2. Whether as between the lessor and a third person parol testimony
was admissible to show that the lease did not express the true
intent of the parties thereto and that there was in fact a sale,
is not decided.]

3. The finding of a jury in such a case that there was no sale was
supported by evidence that the lessee wished to buy and that
the lessor wished to sell and that they agreed upon the price,
but that the lessee could pay only a small sum down and, the
lessor being unwilling to make a binding contract of sale on so
small a payment, a lease with an option to purchase was de-
cided upon, under which the lessee might buy if he could raise
the necessary money and if he could not his rights in the prem-
ises would terminate at the expiration of the lease.

4. A lessee who is obligated by the lease to vacate and give up the
premises in case of a sale thereof has a right to rely upon the
lessor's representation and notification that a sale has been
made, and his delivery of the premises to the alleged purchaser
should not be deemed a voluntary surrender thereof.

5. The lease of a cranberry marsh having provided that the lessee
should vacate the premises in case of a sale and that if called
upon to do so after a certain date he should be paid as compen-
sation for his loss a sum equal to the net profits that would
have accrued if he had been allowed to complete his term, and
the lessee having been induced to surrender the premises by the
lessor's false statement that they had been sold, and it appear-
ing that the net profits which would have accrued to the lessee
were shown with reasonable certainty, such profits were the
proper measure of his damages, it being reasonable to suppose

that both parties contemplated that damages for a breach would be so measured.

6. An award by the jury of $1,362 as damages in such case, reduced by the trial court to $1,000, is further reduced by this court, on appeal, to $600, that being deemed as large a sum as in any reasonable probability a fair jury properly instructed would have awarded.

APPEAL from a judgment of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Reversed.*

On April 14, 1913, the plaintiff and defendant entered into a written agreement whereby the defendant leased its cranberry marsh to the plaintiff. Among other things the agreement provided:

"That said second party [plaintiff] will, at the expiration of this agreement, or upon receiving notice of sale of the premises, promptly vacate and give up said premises. . . .

"In consideration of all the above, said first party [defendant] hereby agrees to lease or rent to said second party the above described premises and all personal property thereon from the date hereof to December 1, 1913, unless this agreement shall be previously terminated by sale, with the privilege of using for the proper care and operation of the marsh all buildings, fixtures, grounds, machinery, implements, fuel, and lumber now on the premises.

"However, it is expressly understood and agreed that nothing in this agreement shall hinder, prevent, or interfere with the sale of the premises, and in case of sale during the life of this contract the said first party agrees to use their best efforts to prevail upon the purchaser to allow the second party thereto to enjoy all the conditions of this contract the same as if no sale had been made; but if this is not agreeable to the purchaser, said first party hereby agrees to pay to the second party the sum of forty dollars per month from date hereof to the day of sale, or if sale is made after July 15, 1913, then said first party is to pay said second party a sum equal to the net profits that would have accrued to said second party if no sale had been made, such sum to be agreed upon by the parties to this contract, or in case of disagreement, to be estimated by Andrew Bissig."

The complaint alleged that on or about May 13, 1913, defendant notified the plaintiff that said marsh had been sold and instructed plaintiff to deliver the possession thereof to one A. J. Amundson, to whom the sale had been made; that relying upon such representations plaintiff delivered possession of the marsh to said Amundson and received from the defendant $33 for his damages under the terms of the agreement; that later plaintiff discovered that in truth and in fact the marsh had not been sold and that Amundson took possession merely as a lessee with an option to purchase in the future if he so desired; that thereafter plaintiff demanded compensation of the defendant according to the terms of the agreement, which compensation defendant refused to pay. Plaintiff further alleges that the net profits that would have accrued to him if no sale had been made would amount under the contract to $1,500, and this action is brought to recover the sum alleged to have been lost. The answer put in issue all the material allegations of the complaint. The jury returned the following special verdict:

"(1) Was there a sale of the Hancock marsh made to Albert J. Amundson in May, 1913?  A. No.

"(2) What were the net profits that would have accrued to the plaintiff from the possession of the Hancock marsh to the end of his lease in December, 1913?  A. $1,362.

"(3) Did the defendant make any misrepresentations of material facts upon which the plaintiff did rightly rely which induced the plaintiff to surrender of the Hancock marsh?  A. Yes."

The court held that the damages awarded by the jury were excessive and should be reduced to $1,000 or the verdict set aside and a new trial ordered, and plaintiff accepted judgment for $1,000. From such judgment defendant appeals.

*J. E. Higbee,* for the appellant.

For the respondent there was a brief by *Goggins & Brazeau,* and oral argument by *Theo. W. Brazeau.*

BARNES, J. Four questions are involved on this appeal: (1) Was there a sale to Amundson? (2) Did plaintiff voluntarily surrender the possession of the premises? (3) Did the court properly instruct the jury as to the rule of damages that should be applied? and (4) Are the damages recovered excessive?

In form the contract between Amundson and the defendant is a lease, containing an option under which the lessee may purchase the premises at a specified price within a prescribed period of time. If the option was taken advantage of, the sum paid for rent was to apply as a payment on the purchase price. It is not seriously contended that this written instrument was a contract of sale, and we are satisfied that it was not. The appellant does earnestly contend, however, that this instrument does not express the true intent and meaning of the parties and that it might and did show by parol the facts and circumstances surrounding the transaction and what actually transpired between the parties before and after the document was signed, and that the real question in the case is, Was there in fact a sale? The respondent claims that the parol evidence offered was incompetent, and that if properly admitted it tended to show that the written agreement embodied the intention of the parties. The weight of authority seems to be to the effect that, where a controversy arises between a party to a contract and a third person, neither is concluded by the contract, but may show what the actual transaction was. In the view we take of the case the matter of the admissibility of the parol testimony is not important, and hence we do not pass upon the question. As we read the testimony of Gaynor, the attorney who drew the lease, and of Amundson, the lessee, the writing expressed the intention finally arrived at by the parties, and, if so, there was abundant evidence to support the answer of the jury to the first question in the special verdict. There is no doubt that Amundson desired to buy and that de-

fendant desired to sell. The price was also agreed upon at $10,000. But Amundson could pay down only $500, and defendant was unwilling to make a binding contract of sale on so small a payment, evidently desiring to avoid the loss and expense of foreclosure in case of default. So a lease with an option to purchase was decided upon. By this arrangement Amundson might buy if he could raise the necessary money, and, if he could not, his rights in the premises would terminate at the expiration of the lease and defendant would not be obliged to foreclose.

There was also evidence from which the jury might have found that defendant represented to plaintiff that it had sold the property when in fact it had not, and that it notified plaintiff of such alleged sale and requested him to deliver possession to the purchaser, and that plaintiff, relying on the representation that there was a sale, did surrender possession to the alleged purchaser. The plaintiff was obligated by his lease to surrender possession in case of a sale, and he had a right to rely on defendant's representations that a sale had been made.

The court charged the jury in substance that plaintiff was entitled to recover as damages the profits which he would have realized from the use of the premises during the term of the lease. Defendant urges that such damages are remote and speculative, and that the true measure was the difference between the reasonable rental of the premises and the sum which plaintiff agreed to pay.

Profits are often an elusive phantom. They are easy to anticipate and hard to realize. Nevertheless in many cases profits can be arrived at with a reasonable degree of certainty, and it frequently happens that they furnish the only fair and adequate basis of compensation for the breach of a contract. The plaintiff and defendant here were apparently satisfied that profits could be ascertained to a reasonable certainty and that they furnished a fair basis of compensa-

tion in case plaintiff was required to vacate during his term. The lease expressly provided that if plaintiff was called upon to vacate after July 15, 1913, he should be paid as compensation for his loss a sum equal to the net profits that would have accrued if he had been allowed to complete his term.

The plaintiff, we think, was entitled to recover such sum as would compensate him for loss arising according to the usual course of things from the wrong done, or such as may reasonably be supposed to have been in the contemplation of both parties at the time the contract was made, as the probable result of the breach. *Cockburn v. Ashland L. Co.* 54 Wis. 619, 12 N. W. 49; *Foss v. Heineman,* 144 Wis. 146, 128 N. W. 881; *Guelzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119.

It must be said here that the plaintiff's loss could be fairly and adequately measured by ascertaining net profits, if such profits could be arrived at to a reasonable certainty, and that the parties contemplated that damages for a breach would be so measured. The profits would largely depend on the amount of production, the labor and other cost of production, and the market value of the crop. The testimony quite satisfactorily established these items, and we conclude that the rule submitted was correct. *Salvo v. Duncan,* 49 Wis. 151, 4 N. W. 1074; *Nilson v. Morse,* 52 Wis. 240, 9 N. W. 1; *Nash v. Hoxie,* 59 Wis. 384, 18 N. W. 408; *Poposkey v. Munkwitz,* 68 Wis. 322, 32 N. W. 35; *Corbett v. Anderson,* 85 Wis. 218, 54 N. W. 727; *Allen v. Murray,* 87 Wis. 41, 57 N. W. 979; *Stumm v. Western Union Tel. Co.* 140 Wis. 528, 531, 122 N. W. 1032; *Treat v. Hiles,* 81 Wis. 280, 50 N. W. 896; *Raynor v. Valentin Blatz B. Co.* 100 Wis. 414, 76 N. W. 343.

Some cases are called to our attention where a different rule of damages was applied in the cases of breaches of covenants contained in leases. See *Shaft v. Carey,* 115 Wis.

155, 90 N. W. 427; *Kellogg v. Malick,* 125 Wis. 239, 103 N. W. 1116; and *Pewaukee M. Co. v. Howitt,* 86 Wis. 270, 56 N. W. 784. In the last two of these cases profits were not allowed because it was held that the profits claimed were too remote and it was not contemplated by the parties that they would measure the lessee's damages in the event of a breach. In the first case the damages allowed furnished adequate compensation and there was no way in which profits could be ascertained with any degree of certainty. These cases were decided on the facts before the court. They do not assume to lay down any hard-and-fast rule applicable to all cases involving breaches of covenants contained in leases.

The jury awarded $1,362 damages. The court reduced the award to $1,000, giving plaintiff the option to remit $362 or take a new trial. In its opinion the court stated:

"The damages in this case are much more than the jury should have allowed. If every contingency had been successfully met and every possible obstacle overcome, the plaintiff could possibly have realized the full amount of the damages awarded him by the jury. If I were awarding the damages, I would not have put them over five or six hundred dollars.

"The answer to the question is, however, all an estimate, and necessarily unsatisfactory in its results, no matter what sum is fixed upon. Reading over my notes of the testimony leads me to think that certain allowances should certainly be made which would reduce more or less the plaintiff's figures."

The court was justified in concluding that the damages assessed were excessive. Judgment should have been permitted for only such a sum as in any reasonable probability a fair jury properly instructed would return. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Rueping v. C. & N. W. R. Co.* 116 Wis. 625, 641, 93 N. W. 843; *Willette v. Rhinelander P. Co.* 145 Wis. 537, 558, 130 N. W. 853. It is apparent that the court overlooked this rule. It is not to be supposed that a fair jury properly instructed

would not place the damages as low as the court would have placed them had it been trying the case without a jury. Much less is it to be supposed that a fair jury would award nearly twice as much damages as the court deemed to be fairly compensatory.    For this reason the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded for new trial unless the plaintiff elects within thirty days after filing the *remittitur* in the trial court to take judgment for $600 and costs, which he may do if he so elects, on motion therefor and on due notice in said court.