FIRST NATIONAL BANK OF EVERETT, WASHINGTON, Appellant, vs. SNELL, Respondent. ·

*December 7, 1910—January 10, 1911.*

*Contracts: Sale or agency? Custom: Measure of damages: Loss of profits.*

1. Where the correspondence between a manufacturer of lumber and a jobber, with reference to a quantity of lumber ordered for a brewing company, in part indicated that a sale to the jobber was intended, and in part indicated a mere agency arrangement, the fact that a commission was allowed the jobber was not conclusive that he was simply a selling agent, especially in view of a general trade custom, found by the trial court to exist, to allow jobbers a special reduction from quoted prices, frequently spoken of as a commission, even when it was known that they were buying on their own account for resale at a profit; and, it appearing that the final order was given by the jobber in his own name and the invoices made to him as purchaser, and that he in turn contracted with the brewing company in his own name, collected the bills himself, and made his own settlements with the shipper, the evidence is *held* to sustain a finding of the trial court that the transaction was a sale to the jobber.

2. The ordinary measure of damages for failure to deliver goods on an executory contract of sale is the difference between the contract price and the market value at the time and place of delivery.

3. The exception to this rule which allows, under some circumstances, a recovery for loss of profits where the vendor knows the goods are bought to fill a pre-existing contract, does not apply to a case where it appears that the goods could be, and in fact a portion of them was, purchased in the open market.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Modified and affirmed.*

This is·an action to recover $990.55 alleged to have been · received by defendant for plaintiff's use. The defendant pleaded a counterclaim and brought into court $380.20 and costs theretofore incurred and denied any further liability. The action was tried by the court. The following facts appeared: In 1907 the defendant dealt in lumber at Milwau-

kee at wholesale and as a jobber for manufacturers.     The
Weidauer & Lansdown Co. (hereafter called the Weidauer
Co.) was a corporation engaged in manufacturing and selling
lumber at Everett, Washington, and the plaintiff was a bank-
ing corporation at the same place.     On June 18, 1906, the
defendant wrote the Weidauer Co. stating that one of the
large breweries in Milwaukee wanted to buy a quantity of
described fir lumber and requesting them to wire the best
price they could name for the stock delivered at Milwaukee,
"subject to a commission for me of fifty cents per M."     On
June 27th the Weidauer Co. replied by telegraph, giving a
price of $40 "including commission," and on the same day
sent a letter to the same effect.     Some further correspondence
took place, and on July 3d the defendant telegraphed the
Weidauer Co. as follows: "Have sold three by eight fir.
Particulars by mail."     On the 9th of July *Snell* sent a letter
giving the particulars, in which he said that he had succeeded
in closing a trade for a part of the fir at $39 per M., and in-
closed a written order as follows:

"Order No. 146.                          July 3rd, 1906.
M. Weidauer & Lansdown Co.
    Ship to Jos. Schlitz Brewing Co.
    At Chestnut St. Sta., Milwaukee.
    How Ship ...... When     See below.
    Terms Reg. 60 ds or 2% upon arrival.
    320 M. ft. 3x8x10' 1st & 2nd
        Clear Fir S2S 2¾"                      $39.00
          Del.
       *Frank N. Snell.*
Invoice to me Milw.
    50c per M. Com.
Shipments to commence about Oct. 1st & to be completed
by about Jany. 1st to 15th.
See letter."

The letter also contained the following:

"You will notice by the order that we have considerably
more time in which to fill it than I at first wrote *you we would*

*have,* so there ought to be no question about getting this out in splendid shape, *and as we want it.* I have promised these people some nice lumber, and am depending upon you. Please acknowledge receipt of this order, and in invoicing it be sure and put my order number on each invoice. We will advise you in case we want some of it earlier than Oct. 1st, or if we want shipments to commence a little later than that, and about how fast we can take care of it, probably about one car per week."

The Weidauer Co. accepted the order by letter on July 13th following. On July 3d the defendant made and delivered to the Schlitz Brewing Co. the following paper called an order:

"Order No. 145.                              July 3, 1906.
*Frank N. Snell.*

Ship to Jos. Schlitz Brewing Company, Chestnut St. Station, Milwaukee.

C., M. & St. P.

60 days or 2% for cash.

When ship: See below.

320 M. ft. 3x8x10', 1st and 2nd Clear Fir, S2S, $2\frac{3}{4}''$, $41.00 del.                              FRANK N. SNELL."

The Weidauer Co. failed to commence shipments as agreed, and in January, 1907, the contract was modified by correspondence so that if three cars were shipped immediately and two more per week until the order was filled (cars being expected to contain about 20,000 feet each), the parties would be satisfied. This arrangement would have resulted in delivery of the whole order by April 8th. As matter of fact only six cars were shipped, aggregating 122,260 feet, the dates of shipment being as follows: March 8th, March 11th, April 12th, June 18th, and two cars July 6th. The amount undelivered on the contract was therefore 197,740 feet. *Snell* in order to carry out his contract with the brewing company purchased in the open market 117,740 feet, paying therefor in excess of the contract price with the Weidauer Co. the sum of $94.25. The balance of the order, amounting to 80,000 feet, was never filled either by the Weidauer Co. or by

*Snell,* but the brewing company went into the market and bought enough to satisfy their wants. The cars were invoiced directly to the defendant. The invoices of the first two cars were assigned to the plaintiff bank and were paid by the defendant's check to the plaintiff on May 10th, after deducting freight, commission, and two per cent. discount. The invoices for the shipments of April 12th and June 18th were also assigned to the plaintiff, together with the respective bills of lading therefor, amounting respectively to $762.06 and $830.70. The defendant received from the brewing company payment for the last named shipments (less the freight bills) amounting in the aggregate to $1,092.69, and it is for this sum, less commission and discount, that this action is brought, the defendant claiming to offset against this claim the aforesaid sum of $94.25 paid over and above the contract price on lumber purchased in the market, and the sum of $200, being lost profits on the 80,000 feet never delivered.

The court found that the relation between the Weidauer Co. and *Snell* was that of vendor and vendee, and that defendant was entitled to offset the said sums, amounting to $294.25, against the plaintiff's demand, and rendered judgment for the plaintiff for the balance due with interest, after deducting said offsets and the amount deposited in court, amounting to $344.45 with costs. The plaintiff contends that *Snell* was simply the agent of the Weidauer Co. in the transaction and not the purchaser of the lumber, and hence can recover no damages in excess of the unpaid commission in any event. From judgment in accordance with the findings the plaintiff appeals.

*Chas. T. Hickox,* for the appellant.

For the respondent there was a brief by *Austin, Fehr & Gehrz,* and oral argument by *G. G. Gehrz* and *E. J. Gehrz.*

WINSLOW, C. J. There are two controlling questions in this case, one of fact and one of law. The question of fact is

whether *Snell* was a purchaser of the lumber for resale to the brewing company or was simply the agent of the Weidauer Co., employed by it upon commission to make the sale. In case *Snell* was a purchaser, the question of law which arises is whether he is entitled to offset lost profits upon the 80,000 feet of lumber never delivered to the brewing company.

1. The question whether *Snell* was a purchaser or a selling agent is not free from difficulty. The fact that his contract with the Weidauer Co. provided that he should have a commission of fifty cents per thousand is relied on as conclusive proof that he was simply an agent. We do not so regard it. It is true that it tends in that direction, as do some expressions in the correspondence, but there are other expressions in the correspondence and acts of the parties which tend in the other direction. It seems to be a case where some of the facts indicate that a sale was intended and others that a mere agency arrangement was intended. Thus it appears that the order was directly given by *Snell* to Weidauer & Co. with directions to invoice to him (*Snell*), and that the invoices were in fact made out in these words: "Sold to *Frank N. Snell, Esq.*," and sent by mail to him in all respects as if he were a purchaser. It also appears that *Snell* made a contract in his own name with the brewing company in all respects as though he were selling the lumber on his own responsibility; that he collected the bills himself, and made his own settlements with the Weidauer Co. So it is a case where there is some considerable confusion in the facts and where different conclusions might be drawn by different minds as to the relationship which the parties expected and intended should exist between them. There was also considerable evidence tending to show that it was a general and well known custom in the business, both in Wisconsin and Washington, that a wholesaler or jobber like the defendant be allowed a special reduction from quoted prices, frequently spoken of as a commission, even though it was understood that he was buying on

his own account for resale at a profit. The court found that such a custom existed and the finding seems to be based upon sufficient evidence.

Taking the entire evidence in the case, we are unable to say that the finding of the trial court on this question is against the clear preponderance of the evidence.

2. *Snell* being a purchaser for resale, the question arises as to the measure of his damages on breach of the contract by the vendor. Damages for failure to fulfil an executory contract for delivery of goods are awarded on the basis of compensation or indemnity, and the well understood general rule is that they consist of the difference between the contract price and the market value at the time and place of delivery.

"The basis of this rule is that, on failure of the vendor to deliver, the purchaser may go into the market and at the time and place of delivery, and supply himself with the same kind of goods at the market price." *Cockburn v. Ashland L. Co.* 54 Wis. 619, 12 N. W. 49.

Special circumstances sometimes require that exception to this general rule be made. For instance, where the article is one not to be obtained in the market and the vendor knows that it is purchased to fill a pre-existing contract, the damages for failure to deliver will be the difference between the contract price to the first vendee and the contract price to the second vendee, unless the second contract price be such as to yield an extraordinary and unusual profit. *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119. This exception to the general rule does not apply here, because it is based upon the entire absence of a market and of a market price for the article, rendering the application of the rule a practical impossibility. In the present case it is proven that the lumber could be, and in fact some portion of it was, purchased in the market.

Another exception to the general rule is noted in *Foss v. Heineman, ante,* p. 146, 128 N. W. 881, but it has no application here.

The court found on sufficient evidence that the market price of the lumber in question at the time and place of delivery was $39.50 per M.   As the contract price to *Snell* was $38.50 per M., his damages for the nondelivery of 80,000 feet were $1 per M. instead of $2.50 per M., as the court allowed him.   In other words, the allowance on defendant's counterclaim was too much by the sum of $120.

The judgment should be modified as of its date by adding to the sum allowed to the plaintiff the sum of $120, making the total amount of the plaintiff's recovery $564.67, damages and costs.

*By the Court.*—Judgment modified with costs as indicated in the opinion, and as so modified affirmed.